**BEFORE THE UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| **IN RE: PARAQUAT** | § | **MDL NO. _____** |
| **PRODUCTS LIABILITY** | § | |
| **LITIGATION** | § | |

---

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR TRANSFER OF ACTIONS TO
THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR
COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

---

## TABLE OF CONTENTS

I.   BACKGROUND OF THE LITIGATION..................................................................... 2

  A.   Paraquat Is a Powerful Toxin that Causes Parkinson's Disease .................................. 2

  B.   Parkinson's Disease Is an Incurable, Progressive Neurodegenerative Disorder Causing Crippling Disability and Suffering..................................................... 4

  C.   Scientific Evidence Has Established that Paraquat Causes Parkinson's Disease by Creating Biochemical Stresses that Kill Neurons. ........................................ 5

II.   LEGAL AUTHORITIES AND ARGUMENT ........................................................ 6

  A.   Transfer and Pretrial Coordination of Related Paraquat Parkinson's Disease Cases Will Promote the Just and Efficient Conduct of Litigation and Further the Goals of 28 U.S.C. § 1407.................................................................................... 6

    1.   Actions by paraquat-exposed plaintiffs, seeking relief from Syngenta and Chevron for paraquat-induced Parkinson's Disease, involve common questions of fact. ......... ..........................................................................................7

    2.   Coordination promotes the just and efficient management of pretrial proceedings for all related action. ........................................................................ 9

    3.   Coordination will serve the convenience of the witnesses and the parties. ............... 11

B.   The Northern District of California is the Most Appropriate Forum for Transfer and Centralization for Coordination................................................... 12

    1.   The Northern District is a convenient venue for consolidated proceedings........ 12

    2.   The Northern District of California is well-equipped to efficiently manage this Multi-District Litigation......................................................................... 13

  C.   Judge Edward M. Chen Is Amply Qualified to Manage This Multidistrict Litigation. ..........................................................................................15

III.   CONCLUSION ................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re A. H. Robins Co. "Dalkon Shield" IUD Prods. Liab. Litig.*,
　406 F. Supp. 540 (J.P.M.L. 1975)........................................................................7

*In re: Air Crash at San Francisco, Cal.*,
　987 F. Supp. 2d 1378 (J.P.M.L. 2013)................................................................13

*In re Baldwin-United Corp. Litig.*,
　581 F. Supp. 739 (J.P.M.L. 1984)......................................................................11

*In re Camp Lejeune, N.C. Water Contamination Litig.*,
　763 F. Supp. 2d 1381 (J.P.M.L. 2011)................................................................10

*In re: Carrier IQ, Inc., Consumer Priv. Litig.*,
　856 F. Supp. 2d 1332 (J.P.M.L. 2012)................................................................15

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prod. Liab. Litig.*,
　273 F. Supp. 3d 1377 (J.P.M.L. 2017)................................................................15

*In re Compression Labs, Inc., Pat. Litig.*,
　360 F. Supp. 2d 1367 (J.P.M.L. 2005)................................................................13

*In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*,
　780 F. Supp. 2d 1379 (J.P.M.L. 2011)..................................................................9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
　509 U.S. 579 (1993)............................................................................................10

*In re Denture Cream Prods. Liab. Litig.*,
　624 F. Supp. 2d 1379 (J.P.M.L. 2009)..................................................................8

*In re Ephedra Prods. Liab. Litig.*,
　314 F. Supp. 2d 1373 (J.P.M.L. 2004)..................................................................8

*Holyfield v. Chevron U.S.A., Inc.*,
　1:20-cv-00165-JAR (E.D. Mo.)..........................................................................10

*In re: Lithium Ion Batteries Antitrust Litig.*,
　923 F. Supp. 2d 1370 (J.P.M.L. 2013)................................................................13

*In re: Lumber Liquidators Chinese-Manufactured Flooring Products Mktg., Sales
　Practices & Products Liab. Litig.*,
　109 F. Supp. 3d 1382 (J.P.M.L. 2015)................................................................12

*In re Milk Antitrust Litig.*,
    530 F. Supp. 2d 1359 (J.P.M.L. 2008)...................................................................10

*In re Plumbing Fixture Cases*,
    298 F. Supp. 484 (J.P.M.L. 1968)......................................................................6

*In re Porsche Cars N. Am., Inc., Plastic Coolant Tubes Prods. Liab. Litig.*,
    787 F. Supp. 2d 1349 (J.P.M.L. 2011)...................................................................10

*In re Prempro Prods. Liab. Litig.*,
    254 F. Supp. 2d 1366 (J.P.M.L. 2003)...................................................................7

*Rakoczy v. Syngenta Crop Protection LLC, et al.*,
    No. 4:21-cv-02083-EMC (N.D. Cal.) ....................................................1, 2, 4, 12

*In re: Roundup Prods. Liab. Litig.*,
    MDL No. 2741 ...............................................................................................14

*In re Silicone Gel Breast Implants Prods. Liab. Litig.*,
    793 F. Supp. 1098 (J.P.M.L. 1992)......................................................................7

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*,
    844 F. Supp. 1553 (J.P.M.L. 1994)................................................................7, 12

*In re Toys "R" Us-Del., Inc., Fair Accurate Credit Transactions Act (FACTA)
Litig.*,
    581 F. Supp. 2d 1377-78 (J.P.M.L. 2008) .............................................................10

*In re Transocean Tender Offer Sec. Litig.*,
    415 F. Supp. 382 (J.P.M.L. 1976)......................................................................10

*In re Viagra (Sildenafil Citrate) Prod. Liab. Litig.*,
    176 F. Supp. 3d 1377 (J.P.M.L. 2016)...................................................................12

*In re Wells Fargo Home Mort. Overtime Pay Litig.*,
    435 F. Supp. 2d 1338 (J.P.M.L. 2006)...................................................................12

*In re: Wells Fargo Home Mortgage Overtime Pay Litig.*,
    MDL No. 1770...............................................................................................15

*In re: Wells Fargo Loan Processor Overtime Pay Litig.*,
    MDL No. 1841...............................................................................................15

*In re Yamaha Motor Corp. Rhino ATV Prods. Liab. Litig.*,
    597 F. Supp. 2d 1377 (J.P.M.L. 2009)...................................................................9

*In re Zimmer Durom Hip Cup Prods. Liab. Litig.*,
    717 F. Supp. 2d 1376 (J.P.M.L. 2010)...................................................................8

*In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*,
   802 F. Supp.2d 1374 (J.P.M.L. 2011)........................................................................10

*In re: Zoloft (Sertraline Hydrochloride) Products Liab. Litig.*,
   856 F. Supp. 2d 1347 (J.P.M.L. 2012)........................................................................9

*In re Zyprexa Prods. Liab. Litig.*,
   314 F. Supp. 2d 1380 (J.P.M.L. 2004)........................................................................7

**Statutes**

28 U.S.C. § 1407(a) ...............................................................................................6, 16

**Other Authorities**

Fed. R. Civ. P. 45(d)(2)..............................................................................................11

H.R. Rep. No. 1130, 90th Cong., 2d Sess. 1 (1968), reprinted in 1968
   U.S.C.C.A.N. .........................................................................................................6

*Manual for Complex Litigation,* Part I, §§ 1.90–1.93 (rev. ed. 1981) ............................11

Movant Paul Rakoczy, Plaintiff in a civil action pending in the United States District Court for the Northern District of California before the Honorable Edward M. Chen,[1] submits this Brief in Support of his Motion for Transfer of Actions to the Northern District of California Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings. Movant respectfully requests transfer of actions identified in the Schedule of Actions, as well as subsequently filed cases also arising from the development of Parkinson's Disease as a result of being exposed to the poisonous herbicide paraquat, to the United States District Court for the Northern District of California for pretrial proceedings before the Honorable Edward Chen, United States District Judge.

The fourteen actions identified in the Schedule of Actions are all brought by plaintiffs suffering from Parkinson's Disease as a result of their debilitating exposures to the toxic herbicide paraquat, and all name Syngenta Crop Protection, LLC, Syngenta AG (collectively "Syngenta"), and Chevron U.S.A. ("Chevron") as defendants. The cases are excellent candidates for coordinated pretrial proceedings because they arise from the same poisonous toxin causing the same crippling disease resulting from the wrongful conduct of the same three defendants. Each paraquat case requires extensive discovery concerning the development, marketing, and toxicity of paraquat, as well as each defendant's knowledge of the relationship between paraquat and Parkinson's Disease. Each plaintiff will conduct the same discovery regarding the regulatory, marketing, licensing, and scientific history of paraquat over more than 60 years to support their case that paraquat caused their Parkinson's Disease. Each of the identified actions is in the early stages of litigation. Centralizing these and all future federal cases before one judge will promote the just and efficient conduct of these actions, prevent inconsistent pretrial rulings and duplicative discovery, and

---

[1] *Rakoczy v. Syngenta Crop Protection LLC, et al.*, No. 4:21-cv-02083-EMC (N.D. Cal.).

conserve the resources of the judiciary, the parties, and their counsel.

Presently, there are at least fourteen substantially similar federal actions, filed by eight different law firms, in six different federal district courts, alleging the same wrongful conduct on the part of the same defendants, their subsidiaries, and their predecessors-in-interest. The undersigned law firm is also informed and believes that several other law firms who have been litigating these cases separately have large volumes of claimants under contract and investigation.

Actions for paraquat-induced Parkinson's Disease involve common questions of law and fact and substantially similar legal claims and requested relief. Transfer for centralization and coordination is appropriate because each of the related actions, as well as any future tag-along actions, arise out of the same or similar nucleus of operative facts and the same or similar alleged wrongful conduct, require resolution of the same or similar legal and factual questions, involve the same or similar scientific and medical evidence, and will require substantially similar discovery involving many of the same documents and witnesses. Early centralization for pretrial proceedings will not only promote efficiency but will further eliminate the threat of inconsistent pretrial rulings. As such, coordination and transfer will fulfil the goals animating 28 U.S.C. § 1407.

## I.      BACKGROUND OF THE LITIGATION

### A.      Paraquat Is a Powerful Toxin that Causes Parkinson's Disease.

Paraquat is a synthetic chemical herbicide developed and sold in the early 1960s. Since 1964, paraquat has been used in the United States to kill broadleaf weeds and grasses before the planting or emergence of various crops, to control weeds in orchards, and to desiccate plants before harvest. Paraquat was commonly used, as intended, multiple times per year on the same land.[2]

To say paraquat is highly toxic is an understatement. This poisonous herbicide injures and

---

[2] *See, e.g.,* Original Complaint, ¶¶ 1, 108-09, 141-42, *Rakoczy v. Syngenta Crop Protection LLC, et al.*, No. 4:21-cv-02083-EMC (N.D. Cal. March 25, 2021).

kills both plants and humans by creating oxidative stresses that degenerate, destroy, and kill living cells. These extremely dangerous oxidative stresses are caused by the redox properties inherent in paraquat's chemical composition and structure: it is a strong oxidant and readily undergoes "redox cycling" in the presence of molecular oxygen, which is plentiful in living cells. This redox cycling impedes the cellular functions necessary to sustain life—photosynthesis in the case of plant cells and cellular respiration in the case of animal cells. Paraquat's biochemical devastation results in a superoxide radical, which is an extremely reactive molecule that can initiate a cascading series of highly destructive chemical reactions. The result is damage to lipids, proteins, and nucleic acids— molecules that are essential to cell life. Because the redox cycling of paraquat can repeat indefinitely, even a single molecule of paraquat can trigger the production of countless superoxide radicals.[3]

Paraquat's redox properties have been known since at least the 1930s, and the fact that paraquat is toxic to animal in addition to plant cells, because it creates oxidative stress through redox cycling, has been known since at least the 1960s. In addition, the surfactants[4] that are combined with paraquat multiply its danger by increasing its ability to stay in contact with or penetrate the skin, mucous membranes, and other epithelial tissues, including the mouth, nose and nasal passages, trachea, and conducting airways, the lungs, and the gastrointestinal tract. The same redox properties that make paraquat toxic to plant cells make it toxic to dopaminergic neurons in humans. Paraquat damages and ultimately kills dopaminergic neurons in humans by creating oxidative stress through redox cycling.[5]

---

[3] *See id.*, ¶¶ 169-175.
[4] Typically, products containing paraquat include one or more "surfactants" to increase the ability of the herbicide to stay in contact with the leaf, penetrate the leaf's waxy surface, and enter into plant cells.
[5] *See id.*, ¶¶ 162-178.

**B.      Parkinson's Disease Is an Incurable, Progressive Neurodegenerative Disorder Causing Crippling Disability and Suffering.**

Parkinson's Disease is a crippling neurodegenerative disorder that attacks the motor system, i.e., the part of the central nervous system that controls movement. There is a consensus in the relevant scientific community that only one in ten cases can be attributed to genetics alone.[6] The primary motor symptoms are resting tremor (shaking movement when the muscles are relaxed), bradykinesia (slowness in voluntary movement and reflexes), rigidity (stiffness and resistance to passive movement), and postural instability (impaired balance). Parkinson's Disease's primary motor symptoms also often result in secondary symptoms such as freezing of gait; shrinking handwriting; mask-like expression; slurred, monotonous, quiet voice; stooped posture; muscle spasms; impaired coordination; difficulty swallowing; and excess saliva and drooling caused by reduced swallowing movements. There is no cure, nor is there any way to stop or reverse the relentless progression of the ongoing ravages of the motor system. Treatments, such as they are, become progressively less effective and inflict unwelcome side effects the longer they are used.[7]

The selective degeneration and death of dopamine-producing nerve cells (i.e., dopaminergic neurons) in a specific region of the brain is one of the primary pathophysiological hallmarks of Parkinson's Disease. As a neurotransmitter, dopamine is a chemical messenger that transmits signals from one neuron to another neuron, muscle cell, or gland cell. Dopamine is critical to the brain's control of *inter alia* motor function. The death of dopaminergic neurons

---

[6]  Scientists who study Parkinson's Disease generally agree that fewer than 10% of all cases are caused by inherited genetic mutations alone, and that more than 90% are caused by a combination of environmental factors, genetic susceptibility, and the aging process. *See, e.g.,* Original Complaint, ¶ 157, *Rakoczy v. Syngenta Crop Protection LLC, et al.*, No. 4:21-cv-02083-EMC (N.D. Cal. March 25, 2021).

[7] *See id.*, ¶¶ 158-161.

decreases the production of dopamine. Once dopaminergic neurons die, they are not replaced. Ultimately dopamine production falls below the level the brain requires for proper control of motor function, resulting in the motor symptoms of Parkinson's Disease. The presence of Lewy bodies (insoluble aggregates of a protein called alpha-synuclein) in many of the remaining dopaminergic neurons is another of the primary pathophysiological hallmarks of Parkinson's Disease.[8]

### C.     Scientific Evidence Has Established that Paraquat Causes Parkinson's Disease by Creating Biochemical Stresses that Kill Neurons.

Paraquat causes devastating biochemical reactions that kill off the brain cells necessary for motor functions. The dopaminergic neurons that paraquat exposure can destroy are particularly susceptible to oxidative stress. Scientists who study Parkinson's Disease generally agree that oxidative stress is a major factor in—if not the precipitating cause of—the degeneration and death of dopaminergic neurons and the accumulation of Lewy bodies in the remaining dopaminergic neurons that are the primary pathophysiological hallmarks of Parkinson's Disease.

Many epidemiological studies have found an association between paraquat exposure and Parkinson's Disease, including multiple studies finding a two- to five-fold or greater increase in the risk of Parkinson's Disease in populations with occupational exposure to paraquat compared to populations without such exposure. In animal models of Parkinson's Disease,[9] hundreds of studies involving various routes of exposure have found that paraquat creates oxidative stress that results in the degeneration and death of dopaminergic neurons, other pathophysiology consistent with that seen in human Parkinson's Disease, and motor deficits and behavioral changes also

---

[8] *See id.*, ¶¶ 162-168.

[9] Parkinson's Disease is not known to occur naturally in any species other than humans. Research of this disabling condition is nonetheless often performed using "animal models," in which scientists artificially produce in laboratory animals conditions that show features of Parkinson's Disease. Paraquat is one of only a handful of toxins that scientists use to produce animal models of Parkinson's Disease.

consistent with Parkinson's Disease in humans. Hundreds of in vitro studies have found that paraquat creates oxidative stress that results in the degeneration and death of dopaminergic neurons.[10]

## II.   LEGAL AUTHORITIES AND ARGUMENT

### A.   Transfer and Pretrial Coordination of Related Paraquat Parkinson's Disease Cases Will Promote the Just and Efficient Conduct of Litigation and Further the Goals of 28 U.S.C. § 1407.

Transfer and pretrial coordination of the actions in a single court is appropriate and will promote the goals of 28 U.S.C. § 1407. Transfer is appropriate where: (A) "civil actions involving one or more common questions of fact are pending in different districts"; (B) transfer and coordination "will promote the just and efficient conduct of such actions"; and (C) transfer and coordination will serve "the convenience of parties and witnesses." 28 U.S.C. § 1407(a). Each criterion is amply satisfied here.

The purpose of multidistrict litigation is to "eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968). Coordination is meant to "assure uniform and expeditious treatment in the pretrial procedures in multidistrict litigation." *See* H.R. Rep. No. 1130, 90th Cong., 2d Sess. 1 (1968), reprinted in 1968 U.S.C.C.A.N. at 1901. Without centralization "conflicting pretrial discovery demands for documents and witnesses" can "disrupt the functions of the Federal courts." *Id.* at 1899. Here, centralization is the only way to ensure consistent pretrial rulings and efficient use of judicial resources.

---

[10] *See id.*, ¶¶ 180-184.

1.      **Actions by paraquat-exposed plaintiffs, seeking relief from Syngenta and Chevron for paraquat-induced Parkinson's Disease, involve common questions of fact.**

The plaintiffs battling incurable and debilitating Parkinson's Disease, who are identified in the Schedule of Actions, raise common factual questions by asserting claims focused on a singular injury, Parkinson's Disease, caused by exposure to paraquat developed, manufactured, distributed, and sold by the same Syngenta and Chevron defendants. This Panel consistently recognizes that Section 1407 coordination is a preferred way to manage individual lawsuits that raise similar questions regarding a defendant's development, design, and testing of a particular product or device. *See, e.g.*, *In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1381–82 (J.P.M.L. 2004); *In re Prempro Prods. Liab. Litig.*, 254 F. Supp. 2d 1366, 1367 (J.P.M.L. 2003); *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 844 F. Supp. 1553, 1554 (J.P.M.L. 1994); *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 793 F. Supp. 1098, 1100 (J.P.M.L. 1992); *In re A. H. Robins Co. "Dalkon Shield" IUD Prods. Liab. Litig.*, 406 F. Supp. 540, 542 (J.P.M.L. 1975).

Here, transfer, coordination, and centralization are appropriate because many common questions of fact exist, including:

- Whether paraquat was defective;

- Whether Syngenta and Chevron had knowledge regarding the existence of a defect;

- Whether Syngenta and Chevron conducted adequate testing of paraquat;

- Whether Syngenta and Chevron breached their duty of care to plaintiffs;

- Whether Syngenta and Chevron failed to warn about the risks of paraquat;

- Whether Syngenta and Chevron breached any warranty, express or implied, related to their sale of paraquat;

- Whether paraquat causes Parkinson's Disease generally; and

- Whether paraquat is capable of causing Parkinson's Disease and associated injuries based on the types of exposures sustained by plaintiffs.

Because Syngenta and Chevron are denying that the highly poisonous herbicide paraquat causes Parkinson's Disease, significant pretrial discovery will be required to evaluate: (a) paraquat's ability to cause Parkinson's Disease generally; (b) Syngenta and Chevron's knowledge of paraquat's propensity to cause Parkinson's Disease; and (c) defendants' efforts to conceal those risks. All of this pretrial discovery applies equally to *all* plaintiffs. Determination of these and other common issues in a single district will benefit the parties and witnesses by promoting the efficient prosecution and resolution of these actions.

To the extent "non-common" issues of fact exist, the centralization of all actions nevertheless ensures the pivotal common issues of fact will be able to proceed in an orderly, consistent, and efficient manner. *See In re Ephedra Prods. Liab. Litig.*, 314 F. Supp. 2d 1373 (J.P.M.L. 2004). As this Panel previously held, "transfer to a single district under Section 1407 has the salutary effect of placing all the related actions before a single judge who can formulate a pretrial program that: 1) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues . . . and 2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *Id*. at 1375 (citations omitted). Although these paraquat actions, as with cases in any MDL, present individualized fact questions such as specific causation and damages, "Section 1407 does not require a complete identity or even a majority of common factual issues as a prerequisite to centralization." *In re Zimmer Durom Hip Cup Prods. Liab. Litig.*, 717 F. Supp. 2d 1376, 1378 (J.P.M.L. 2010); *see also In re Denture Cream Prods. Liab. Litig.*, 624 F. Supp. 2d 1379, 1381 (J.P.M.L. 2009). Instead, where, as here, the underlying

factual and legal allegations are sufficiently similar, "[t]ransferee judges have demonstrated the ability to accommodate common and individual discovery tracks, gaining the benefits of centralization without delaying or compromising consideration of claims on their individual merits." *In re Yamaha Motor Corp. Rhino ATV Prods. Liab. Litig.*, 597 F. Supp. 2d 1377, 1378 (J.P.M.L. 2009); *see also In re: Zoloft (Sertraline Hydrochloride) Products Liab. Litig.*, 856 F. Supp. 2d 1347, 1348 (J.P.M.L. 2012) ("[W]e have found that products liability cases often present some individual factual issues, but that coordination of discovery across all actions, with the use of common and individual discovery tracks, can offer efficiencies to all parties.") (citing *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 780 F. Supp. 2d 1379, 1381 (J.P.M.L. 2011)).

### 2. Coordination promotes the just and efficient management of pretrial proceedings for all related action.

Because the actions share common questions of fact that implicate overlapping fact and expert discovery, coordination of these actions before a single judge provides the most efficient approach to managing the cases.

Plaintiffs in each of the pending actions are likely to seek much of the same discovery from the same Syngenta and Chevron defendants. Specifically, documents and deposition testimony related to the testing, design, labeling, marketing, and safety of paraquat herbicides, as well as each defendants' research and evaluation of the toxicity and safety of the herbicides, will be at issue in each of the actions. Coordinating the actions before one judge allows the parties and the court to address this overlapping discovery in an organized manner and avoid the costly duplication of efforts and judicial resources if the cases proceeded on separate schedules and in separate courts.

Coordination is also appropriate to avoid inconsistent pretrial rulings on the same or similar issues including expert challenges under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S.

579 (1993), and the uncertainty and confusion that would result. *See In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, 802 F. Supp.2d 1374, 1376 (J.P.M.L. 2011) ("Centralization under Section 1407 will eliminate duplicative discovery [and] prevent inconsistent pretrial rulings on *Daubert* and other pretrial issues . . . ."); *In re Transocean Tender Offer Sec. Litig.*, 415 F. Supp. 382, 384 (J.P.M.L. 1976) ("[T]he likelihood of motions for partial dismissal and summary judgment in all three actions grounded at least in part on [a common issue] makes Section 1407 treatment additionally necessary to prevent conflicting pretrial rulings and conserve judicial effort.").

Moreover, transfer, centralization, and consolidation are especially appropriate in this litigation because it is already national in scope, with at least fourteen actions pending in six different federal district courts. These cases alone would justify centralization, as the Panel routinely coordinates cases involving substantially fewer actions.[11] Given the pervasive use of paraquat across the country over the last 60 years, and the fact that the first federal action only commenced on July 29, 2020,[12] Movant expects that the number of similar cases filed in state and federal courts across the country will expand rapidly. *See In re Camp Lejeune, N.C. Water Contamination Litig.*, 763 F. Supp. 2d 1381, 1382 (J.P.M.L. 2011) (considering the potential for "a large number of additional related actions to be filed" as a factor weighing in favor of centralization). There is therefore a clear need for centralized coordination of these actions and

---

[11]  The Panel only requires two actions pending in two federal districts for consolidation under 28 U.S.C. § 1407. *See, e.g.*, *In re Toys "R" Us-Del., Inc., Fair Accurate Credit Transactions Act (FACTA) Litig.*, 581 F. Supp. 2d 1377-78 (J.P.M.L. 2008) (consolidating two actions pending in two districts). *See also In re Porsche Cars N. Am., Inc., Plastic Coolant Tubes Prods. Liab. Litig.*, 787 F. Supp. 2d 1349, 1360 (J.P.M.L. 2011) (involving four actions in four districts); *In re Milk Antitrust Litig.*, 530 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008) (involving four actions and two potential tag-alongs in two districts); *In re Camp Lejeune, N.C. Water Contamination Litig.*, 763 F. Supp. 2d 1381, 1381-82 (J.P.M.L. 2011) (involving four actions in four districts).
[12]  *Holyfield v. Chevron U.S.A., Inc.*, 1:20-cv-00165-JAR (E.D. Mo.).

future tag-along actions in order to avoid overlapping discovery and conflicting pretrial rulings. Centralization will also promote judicial economy since only one court, as opposed to multiple courts throughout the country, will resolve the variety of common issues described above.

### 3. Coordination will serve the convenience of the witnesses and the parties.

For many of the same reasons that coordination will promote the just and efficient management of the actions, it will also serve the convenience of the witnesses and parties. In particular, coordinating and streamlining discovery will minimize unnecessary duplication of discovery requests and expenses, such as travel costs, expert fees, and electronically stored information ("ESI") management costs, and allow the parties to conserve, and more effectively focus, their resources in litigating these actions. For instance, the same 30(b)(6) depositions can be used in each of the actions. Depositions of defendants' current and former management and research personnel could also be used in each of the actions. Additionally, expert depositions could be used uniformly. As this Panel has recognized:

> Since a Section 1407 transfer is for pretrial proceedings only, there is usually no need for the parties and witnesses to travel to the transferee district for depositions or otherwise. *See, e.g.*, Fed. R. Civ. P. 45(d)(2). Furthermore, the judicious use of liaison counsel, lead counsel and steering committees will eliminate the need for most counsel ever to travel to the transferee district. *See Manual for Complex Litigation,* Part I, §§ 1.90–1.93 (rev. ed. 1981). And it is most logical to assume that prudent counsel will combine their forces and apportion the workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of cost and a minimum of inconvenience to all concerned.

*In re Baldwin-United Corp. Litig.*, 581 F. Supp. 739, 740–41 (J.P.M.L. 1984) (citation omitted). Thus, by allowing the centralization of pretrial proceedings for the actions, and the anticipated flood of actions in the future, current and future plaintiffs will have a single, organized, and easily accessible forum to have discovery adjudicated. Since centralization and pretrial coordination will "eliminate duplicative discovery, prevent inconsistent pretrial rulings . . . and conserve the

resources of the parties, their counsel and the judiciary," *In re Temporomandibular Joint (TMJ) Implants*, 844 F. Supp. at 1554, centralizing the actions in one court benefits everyone.

      **B.**    **The Northern District of California is the Most Appropriate Forum for Transfer and Centralization for Coordination.**

      The Northern District of California's San Francisco Division, where Judge Chen sits, is within forty miles of Chevron U.S.A.'s headquarters in San Ramon,[13] providing easy access to documents and witnesses. *See In re: Lumber Liquidators Chinese-Manufactured Flooring Products Mktg., Sales Practices & Products Liab. Litig.*, 109 F. Supp. 3d 1382, 1383 (J.P.M.L. 2015) ("[Defendant] is based in this district... and relevant documents and witnesses will likely be found there"). Moreover, centralization in the Northern District of California allows for easy coordination with state court proceedings in California. *See id.* (considering ease of coordination with similar proceedings involving the same defendant).

      **1.**    **The Northern District is a convenient venue for consolidated proceedings.**

      This Panel has recognized that the Northern District of California "provides a convenient and easily accessible location for . . . geographically dispersed litigation." *In re Viagra (Sildenafil Citrate) Prod. Liab. Litig.*, 176 F. Supp. 3d 1377, 1378 (J.P.M.L. 2016); *see also In re Wells Fargo Home Mort. Overtime Pay Litig.*, 435 F. Supp. 2d 1338, 1340 (J.P.M.L. 2006) (Northern District of California "is an accessible location that will be geographically convenient for litigants, witnesses and counsel"). In addition to being easily accessible, the Northern District of California is well equipped with the resources required in a complex docket. *See In re Compression Labs, Inc., Pat. Litig.,* 360 F. Supp. 2d 1367, 1369 (J.P.M.L. 2005) (the Northern District of California

---

[13] *See, e.g.,* Original Complaint, ¶ 7, *Rakoczy v. Syngenta Crop Protection LLC, et al.*, No. 4:21-cv-02083-EMC (N.D. Cal. March 25, 2021) (Chevron's principal place of business is in San Ramon, California).

"is an easily accessible, metropolitan district that is well equipped with the resources that this complex docket is likely to require").

Here, the convenience of this District is all the more pronounced as Chevron U.S.A., one of the main defendants in this litigation, has its principal place of business in the Northern District of California. Having many of the witnesses in close proximity to the location of the MDL will serve the convenience of the litigants and the witnesses. *See, e.g., In re: Air Crash at San Francisco, Cal*., 987 F. Supp. 2d 1378, 1379 (J.P.M.L. 2013) (Northern District of California is logical choice to serve as transferee forum because *inter alia* several plaintiffs and witnesses were located there); *In re: Lithium Ion Batteries Antitrust Litig*., 923 F. Supp. 2d 1370, 1371 (J.P.M.L. 2013) (Northern District of California stands out as most appropriate transferee forum; relevant documents and witnesses may be found there, inasmuch as several defendants have major facilities in or near the district). Additionally, the courthouse for the Northern District of California's San Francisco Division is in downtown San Francisco, close to hotels and mass transit, and is less than 13 miles from San Francisco International Airport—one of the largest airports in the county—making it easily accessible from anywhere in the country.

### 2.     The Northern District of California is well-equipped to efficiently manage this Multi-District Litigation.

Three factors make the Northern District of California a superior forum: (1) the District's previous success in resolving a mass tort involving an herbicide; (2) the subpoena power over Chevron U.S.A.'s corporate witnesses; and (3) the geographic proximity to California, allowing for easy coordination with concurrent state court actions.

This Panel previously transferred products liability litigation involving another pesticide to the Northern District of California, and that litigation is reaching conclusion: *In re: Roundup Prods. Liab. Litig.*, MDL No. 2741 ("Roundup MDL"). There are at least 15,000 cases pending in

this litigation, and upon information and belief the parties have reached a mass settlement initiative resulting in the settlement of the vast majority of the cases.

The judges in the Northern District of California also understand the importance of coordination efforts between multidistrict litigation and the various state court consolidated litigations in order to promote the just and efficient conduct of the litigation. In the Roundup MDL, successful cooperation and coordination efforts with the various state court jurisdictions avoided duplicative discovery and inconsistent court rulings, and ultimately resulted in the inclusion of state court claimants as participants in the global settlement initiative. Here, there are California Judicial Council Coordinated Proceedings involving the same product, defendants, and injuries pending in Contra Costa County, California, which is located within the Northern District of California's boundaries.[14] Centralization in the Northern District of California provides the greatest ease for coordination with these state-court proceedings due to geographic proximity to the concurrent actions in California.

Finally, the Northern District of California provides a well-prepared, well-staffed and overall top-notch staff and Clerk's office that is experienced in handling complex litigation. Given the Northern District of California's extensive experience in successfully managing complex litigation and the thousands of cases on file in the district, the staff and Clerk's office in the Northern District of California is experienced, efficient, and well-equipped to provide the necessary support services for managing this litigation. The efficiency and experience of the Clerk's office in a district court is absolutely vital to the successful management and administration of large-scale multidistrict litigations, and it is clear that the Clerk's office in the Northern District

---

[14] *Paraquat cases*, JCCP No. 5031 (Contra Costa County, California), *see* https://www.courts.ca.gov/documents/CivilCaseCoord_2015toPresent_JCCPLog.pdf.

of California has proven its abilities and exceptional work in this regard.

**C.  Judge Edward M. Chen Is Amply Qualified to Manage This Multidistrict Litigation.**

There are currently five paraquat Parkinson's Disease actions filed in the Northern District of California, the lowest-numbered of which is assigned to Judge Edward M. Chen. Judge Chen is amply qualified to manage this litigation, having successfully overseen *In re: Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2777, which is drawing to a close, as well as *In re Carrier IQ, Inc. Consumer Privacy Litig.*, MDL No. 2330; *In re: Wells Fargo Loan Processor Overtime Pay Litig.*, MDL No. 1841; and *In re: Wells Fargo Home Mortgage Overtime Pay Litig.*, MDL No. 1770.

In entrusting the management of these Multidistrict Litigation proceedings to Judge Chen, this Panel repeatedly has lauded his expertise. For example, this Panel recognized Judge Chen as "a jurist well-versed in the nuances of complex and multidistrict litigation who can steer this matter on a prudent course" in the *Chrysler-Dodge-Jeep* MDL. *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prod. Liab. Litig.*, 273 F. Supp. 3d 1377, 1379 (J.P.M.L. 2017). Consistently, in the *Carrier IQ* litigation, the Panel recognized that in selecting Judge Chen, "we are choosing a jurist experienced in multidistrict litigation." *In re: Carrier IQ, Inc., Consumer Priv. Litig.*, 856 F. Supp. 2d 1332, 1333 (J.P.M.L. 2012). As Judge Chen has ably steered the *Chrysler-Dodge-Jeep* MDL toward the finish line, he is poised to apply his well-recognized expertise to a newly created *In re Paraquat Product Liability Litigation* MDL.

## III.  CONCLUSION

Because creation of a Multidistrict Litigation for pretrial proceedings is appropriate pursuant to Title 28, Section 1407, United States Code, Movant Paul Rakoczy respectfully requests that the Panel transfer the actions on the attached Schedule, and all subsequently filed tag-along

cases seeking relief from Syngenta and Chevron for paraquat-induced Parkinson's Disease, for coordinated and consolidated pretrial proceedings before the Northern District of California, and assign the multidistrict litigation to the Honorable Edward M. Chen. In the alternative, Movant requests assignment to another appropriate tribunal.

Respectfully Submitted,

*/s/ Patrick A. Luff*
S. Ann Saucer (LA SBN: 21368; TX SBN: 00797885)
asaucer@fnlawfirm.com
N. MAJED NACHAWATI (TX SBN: 24038319)
mn@fnlawfirm.com
PATRICK A. LUFF (TX SBN: 24092728)
pluff@fnlawfirm.com
**FEARS NACHAWATI, PLLC**
5473 Blair Road
Dallas, Texas 75231
Telephone: (214) 890-0711

*Fears Nachawati, PLLC is counsel of record for Movant Paul Rakoczy and Plaintiffs Michael and Jean Kearns, Todd Tenneson, and Kenneth Turner*
