BEFORE THE UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: PARAQUAT PRODUCTS LIABILITY LITIGATION | § § § | MDL NO. 3004 |

**RESPONSE BY PLAINTIFFS ALBANESE AND O'CONNOR IN SUPPORT OF PLAINTIFF'S MOTION FOR TRANSFER OF ACTIONS TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

COMES NOW, David and Theresa Albanese and Timothy and Carolyn O'Connor, pursuant to 28 U.S.C. §1407 and Rule 6.2 of the Rules of Procedure for the Judicial Panel on Multidistrict Litigation, to respectfully respond to movants' motion for transfer (Doc. 1, the "Motion"). Plaintiffs support the motion that the related actions and tag-along actions should be centralized in an MDL for pretrial proceedings. Plaintiffs further support the consolidation in front of the Honorable Edward M. Chen of the Northern District of California.

Plaintiffs' actions David and Theresa Albanese v. Syngenta et. al. (3:21-cv-02496) (N.D. California) and Timothy and Carolyn O'Connor v. Syngenta et. al. (3:21-cv-02495) (N.D. California) are pending in the Northern District of California with likely assignment to Judge Chen under Local Rules 13-2 and 13-3. The Northern District of California is the most appropriate transferee forum because: (1) the Northern District of California has the resources to efficiently manage this case; (2) the Judge suggested is a dedicated, well respected jurist with significant experiencing handling complex cases; and (3) Defendant Chevron U.S.A. maintains their principal place of business in the Northern District of California.

I.      BACKGROUND

1

Plaintiff Timothy O'Connor and Plaintiff David Albanese repeatedly exposed to and inhaled, ingested, or absorbed paraquat in the course of mixing, spraying, and otherwise applying the chemical to fields. After repeated and consistent paraquat exposure, Plaintiffs suffered neurological injuries consistent with Parkinson's Disease caused by their exposure to paraquat. Plaintiffs were ultimately diagnosed with Parkinson's Disease. Defendants knew or should have known of the risk of neurological injuries to persons who used paraquat.

As movant outlined in the Motion, paraquat is a highly toxic synthetic chemical herbicide. Since 1964, paraquat has been used in the U.S. to kill broadleaf weeds and grasses before the planting or emergence of more than 100 field, fruit, vegetable, and plantation crops, to control weeds in orchards, and to desiccate (dry) plants before harvest. Paraquat injures and kills plants by creating oxidative stress that causes or contributes to cause the degeneration and death of plant cells. Paraquat injures and kills humans and other animals by creating oxidative stress that causes or contributes to cause the degeneration and death of animal cells.

The same redox properties that make paraquat toxic to plant cells and other types of animal cells make it toxic to dopaminergic neurons in humans — paraquat is a strong oxidant that interferes with the function of, damages, and ultimately kills dopaminergic neurons by creating oxidative stress through redox cycling. Although Parkinson's Disease is not known to occur naturally in any species other than humans, Parkinson's Disease research is often performed using "animal models," in which scientists artificially produce in laboratory animals conditions that show features of Parkinson's Disease. Paraquat is one of only a handful of toxins that scientists use to produce animal models of Parkinson's Disease.

Hundreds of in vitro studies have found that paraquat creates oxidative stress that results in the degeneration and death of dopaminergic neurons (and many other types of animal cells).

Many epidemiological studies (studies of the patterns and causes of disease in defined populations) have found an association between paraquat exposure and Parkinson's Disease, including multiple studies involving various routes of exposure have found that paraquat causes a two- to five-fold or greater increase in the risk of Parkinson's Disease in populations with occupational exposure to paraquat compared to populations without such exposure. In spite of the clear body of evidence proving a causal connection between paraquat and Parkinson's disease, Defendants' refuse to warn of the associations with Parkinson's Disease or any long-term chronic neurological toxicity.

Movant filed a schedule of actions with the motion to transfer (Doc. 1-2) noting fourteen related actions brought by plaintiffs suffering from Parkinson's Disease as a result of their exposures to the toxic herbicide paraquat, and all name Syngenta Crop Protection, LLC, Syngenta AG, and Chevron U.S.A. as Defendants. Plaintiffs Albanese and O'Connor agree with the movant that the Related Actions share common issues of fact and law. All of the actions are based on plaintiffs' claim that exposure to paraquat developed, manufactured, distributed, and sold by the same Syngenta and Chevron defendants, caused their injury of Parkinson's Disease. Consolidation is appropriate and warranted.

## II. ARGUMENT

Transfer and pretrial coordination of the actions in a single court is appropriate and will promote the goals of 28 U.S.C. § 1407. Transfer is appropriate where: (A) "civil actions involving one or more common questions of fact are pending in different districts"; (B) transfer and coordination "will promote the just and efficient conduct of such actions"; and (C) transfer and coordination will serve "the convenience of parties and witnesses." 28 U.S.C. § 1407(a).

Plaintiffs concur with the arguments made by Movant that there are numerous questions of fact including:

- Whether paraquat was defective;
- Whether Syngenta and Chevron had knowledge regarding the existence of a defect;
- Whether Syngenta and Chevron conducted adequate testing of paraquat;
- Whether Syngenta and Chevron breached their duty of care to plaintiffs;
- Whether Syngenta and Chevron failed to warn about the risks of paraquat;
- Whether Syngenta and Chevron breached any warranty, express or implied, related to their sale of paraquat;
- Whether paraquat causes Parkinson's Disease generally; and
- Whether paraquat is capable of causing Parkinson's Disease and associated injuries based on the types of exposures sustained by plaintiffs.

Plaintiffs further concur and restate movant's arguments that Coordination promotes the just and efficient management of pretrial proceedings for all related actions and Coordination will serve the convenience of the witnesses and the parties.

1. **The Northern District of California is the most appropriate forum for transfer.**

Plaintiffs Albanese and O'Connor concur with movant's suggestion that the Northern District of California is the most appropriate forum for transfer. First, the Northern District of California is the most convenient venue to allow coordination with the California state actions in JCCP 5031 in Contra Costa California before the Honorable Edward G. Weil.  Second, the Northern District of California's proximity to Defendant Chevron U.S.A.'s headquarters in San Ramon, California provides convenience for parties and witnesses.  Third, the Northern District of California generally provides access to an International Airport, hotels and the amenities of a major city to accommodate litigants.  Lastly, the Northern District of California provides numerous Judges and clerical staff versed in managing multi-district litigations.

    **2.**    **Judge Edward M. Chen is an Highly Qualified Jurist to Manage the Proceedings**

Judge Edward M. Chen has a proven track record of overseeing complex litigations including multi-district litigations. See *In re: Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2777; *In re Carrier IQ, Inc. Consumer Privacy Litig.*, MDL No. 2330; *In re: Wells Fargo Loan Processor Overtime Pay Litig.*, MDL No. 1841; and *In re: Wells Fargo Home Mortgage Overtime Pay Litig.*, MDL No. 1770. This Panel recognized Judge Chen as "a jurist well-versed in the nuances of complex and multidistrict litigation who can steer this matter on a prudent course" in the Chrysler-Dodge-Jeep MDL. *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prod. Liab. Litig.*, 273 F. Supp. 3d 1377, 1379 (J.P.M.L. 2017). Consistently, in the Carrier IQ litigation, the Panel recognized that in selecting Judge Chen, "we are choosing a jurist experienced in multidistrict litigation." *In re: Carrier IQ, Inc., Consumer Priv. Litig.*, 856 F. Supp. 2d 1332, 1333 (J.P.M.L. 2012). Accordingly, Judge Chen is uniquely qualified to manage the complexities associated with this multi-district litigation. Plaintiffs Albanese and O'Connor therefore join movant in recommending the panel assign the MDL to the Northern District of California before the Honorable Edward M. Chen.

    **III.**    **CONCLUSION**

Pursuant to Title 28, Section 1407, United States Code, Plaintiffs Albanese and O'Connor respectfully request that the Panel grant Movant's Motion and transfer the actions on the attached Schedule, and all subsequently filed tag-along consolidated actions for pretrial proceedings before the Northern District of California, and assign the multidistrict litigation to the Honorable Edward M. Chen.

**THE MILLER FIRM, LLC**

*/s/ Michael J. Miller*

Michael J. Miller, Esq.
Tayjes Shah, Esq.
Curtis G. Hoke, Esq.
**THE MILLER FIRM, LLC**
108 Railroad Avenue
Orange, Virginia 22960
Tel: (540) 672-4224
Fax: (540) 672-3055
Email: choke@millerfirmllc.com

*Attorneys for Plaintiffs*