**BEFORE THE UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

IN RE: PARAQUAT PRODUCTS                                    MDL No. 3004
LIABILITY LITIGATION


**<u>INTERESTED PARTY RESPONSE OF PLAINITFFS HENRY HOLYFIELD AND</u>**
**<u>TARA HOLYFIELD IN OPPOSITION TO COORDINATED OR</u>**
**<u>CONSOLIDATED PROCEEDINGS PURSUANT</u>**
**<u>TO 28 U.S.C. § 1407</u>**

**TABLE OF CONTENTS**

I.      BACKGROUND……………………………………………………………1

II.     ARGUMENT/DISCUSSION……………………………………………… 3

        A.      Discovery efficiency does not favor consolidation………………………...4
        B.      Common issues do not warrant consolidation…………………………... 5
        C.      The number of cases do not warrant consolidation………………………... 8

III.    VENUE FOR CONSOLIDATION……………………………………………9

IV.     CONCLUSION…………………………………………………………..10

## TABLE OF AUTHORITIES

### CASES

*Bullock v. Gulf & W. Mfg.*,
340 N.W.2d 294, 295-96 (Mich. 1983)……………………………….... 7

*Cline v. Prowler Indus. of Maryland, Inc.*,
418 A.2d 968, 971 (Del. 1980)…………………………………..........7

*In re Camp Lejeune, NC Water Contamination Litigation*,
763 F. Supp.2d 1381 (J.P.M.L. 2011)………………………………………8

*In re: Cymbalta (Duloxetine) Products Liability Litig.*,
65 F. Supp.3d 1393, 1394 (J.P.M.L. 2014)…………………………………4, 5

*In re Dicamba Herbicides Litigation,*
1:18-md-2820-SNLJ (E.D. Mo.)………………………………………………9

*In re: Eli Lilly & Co. (Celphalexin Monohydrate) Patent Litig.*,
446 F. Supp. 242, 243-44 (J.P.M.L. 1978)………………………………… 3

*In re: Enhanced Recovery Company, LLC, Fair Debt Collection Practices Act
(FDCPA) Litig.*,
363 F. Supp.2d 1375 (J.P.M.L. 2019)……………………………………... 3

*In re: General Motors LLC Chevrolet Bolt EV Battery Products
Liability Litig.*,
-- F. Supp.2d --, 2021 WL 1220771, MDL No. 2987 at \*2
(J.P.M.L. April 1, 2021)…………………………………………………….3, 4, 6, 8

*In re Genetically Modified Rice Litigation*,
4:06-md-1811 (E.D. Mo.)………………………………………………….. 9

*In re: Linear Gadolinium-Based Contrast Agents Products Liability Litig.*,
341 F. Supp.3d 1381, 1382 (J.P.M.L. 2018)………………………………..5, 7, 8

*In re Route 91 Harvest Festival Shootings in Las Vegas, Nevada,
On October 1, 2017,*
347 F. Supp.3d 1355, 1357 (J.P.M.L. 2018)……………………….……..6

*Ostendorf v. Clark Equip. Co.*,
122 S.W.3d 530, 535 (Ky. 2003)……………………………………….. 7

*Pelc v. Bendix Mach. Tool Corp.,*
314 N.W.2d 614, 620 (Mich. 1981)…………………………………….. 7

*Smith v. Fiber Controls Corp.*,
     268 S.E.2d 504, 509-10 (N.C. 1980)………………………………………. 7

*Woods v. Fruehauf Trailer Corp.*,
     765 P.2d 770, 774 (Okla. 1988)…………………………………………. 7

## **STATUTES**

28 U.S.C. § 1407…………………………………………………………………1, 3, 4, 7, 8, 10

## **OTHER AUTHORITIES**

M.A.I. 11.10……………………………………………………………….......……7

M.A.I. 25.04……………………………………………………………………………7

Masterman, Clayton J. and Viscusi, W. Kip (2020) "The Specific Consumer
     Expectations Test for Product Defects," *Indiana Law Journal*,
     Vol. 95, Iss. 1, Art. 5………………………………………………..…7

Interested parties Plaintiffs Henry Holyfield and Tara Holyfield ("the Holyfields") oppose consolidation of their case in any multidistrict litigation (MDL) proceeding under 28 U.S.C. § 1407.  As discussed below, the moving party has not met its burden to show that transfer and consolidation of these cases will serve the convenience of the parties, witnesses or promote just and efficient resolution of these claims.

Should this Panel determine that consolidation is proper, the Holyfields request that consolidation take place in the Eastern District of Missouri before the Honorable John Ross so that Judge Ross can determine whether the Holyfield case may proceed separately and at its current pace.  The Holyfield case has been on file since July 2020, and has progressed to the point that a ruling has been made on defendants' motions to dismiss.  Therefore, the Holyfield case is ready to begin discovery in earnest.  In contrast, every other federal court case has only been on file since the beginning of January 2021, and many have yet to accomplish service of process.

Finally, should this Panel order consolidation outside the Eastern District of Missouri, the Holyfields suggest that the cases be consolidated before the Honorable Nancy J. Rosenstengel, Chief Judge of the United States District Court for the Southern District of Illinois.

## I.      BACKGROUND

Plaintiffs Henry Holyfield and Tara Holyfield live in Scott City, Missouri.  Growing up, Henry Holyfield worked for his father's crop dusting business.  From approximately 1965 to 1975, Henry Holyfield worked as a laborer, assisting with the crop dusting operation.

One of the jobs that Henry Holyfield had was to act as a "flagman" and serve as the reference point for an airplane spraying a field to make sure that the entire field was covered evenly. As a flagman, Henry Holyfield would stand at the end of a field being sprayed holding a

flag. The airplane would fly a path directly toward Mr. Holyfield, spraying the chemical being applied to the field.  At the last moment, Mr. Holyfield would move out of the path of the oncoming airplane and reposition himself so that the plane could circle around and make the next pass over the field.  This process would be repeated over, and over, until the entire field had been sprayed.

Through his work as a flagman, and as a laborer mixing chemicals and filling tanks, Henry Holyfield was exposed to the herbicide Paraquat – which was used to kill unwanted grasses and weeds and as an aid in the harvesting of cotton crops at the end of a growing season. Paraquat is well-known within the scientific community to be associated with the development of Parkinson's disease.  See e.g. Tanner, et al., *Occupation and Risk of Parkinsonism*, Archives of Neurology, Vol 66, No. 9, 1106-13 (Sept. 2009)(Exhibit 1).

In August 2015, Henry Holyfield was diagnosed with Parkinson's disease.  By 2020, Mr. Holyfield's disease had progressed to the point where he was forced to retire from his position as a bank president.

In July 2020, the Holyfields filed their case in the Circuit Court of Scott County, Missouri.  Shortly thereafter, the case was removed to the United States District Court for the Eastern District of Missouri.  As discussed above, in September 2020, defendants moved to dismiss all claims in this case based upon preemption under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA).  The motion to dismiss was fully briefed and argued to the court in January 2021.  On April 12, 2021, Judge Ross entered an order denying defendants' motions to dismiss.  The Holyfield case is now ready to begin discovery and proceedings on the merits.

## II.    ARGUMENT/DISCUSSION

28 U.S.C. § 1407 provides that when it is shown that consolidation "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions" centralization in an MDL may be ordered.  Movants have the burden to demonstrate that transfer and consolidation under section 1407 is proper.  See *In re: Eli Lilly & Co. (Celphalexin Monohydrate) Patent Litigation*, 446 F. Supp. 242, 243-44 (J.P.M.L. 1978)("*In re: Eli Lilly*"). Where, as here, the number of pending cases are relatively small, the moving party bears a heavier burden to show that transfer and consolidation are proper.  *In re: Enhanced Recovery Company, LLC, Fair Debt Collection Practices Act (FDCPA) Litigation*, 363 F. Supp.2d 1375 (J.P.M.L. 2019)("*In re: Enhanced Recovery*").

**"Section 1407 should be the last solution after considered review of all other options."**  *In re: General Motors LLC Chevrolet Bolt EV Battery Products Liability Litigation*, -- F. Supp.2d --, 2021 WL 1220771, MDL No. 2987 at *2 (J.P.M.L. April 1, 2021)(emphasis added)("*In re: General Motors*").  As this Panel recently observed, "[a]mong these options are voluntary cooperation and coordination among the parties and the involved courts to avoid duplicative discovery and inconsistent pretrial rulings."  *Id*. (citing *In re: Eli Lilly*, 446 F. Supp. at 244).  See also *In re: Enhanced Recovery*, 363 F. Supp.2d at 1377. ("To the extent there is any possibility of duplicative discovery or inconsistent pretrial rulings, voluntary cooperation and coordination among the parties and the involved courts seems a feasible alternative to centralization.")

As the decisions in *In re: Eli Lilly, In re: Enhanced Recovery, In re: General Motors*, and the other JPML case cited below demonstrate, unless a movant meets its burden to show that centralization serves the convenience of the parties, witnesses and promotes just and efficient

resolution of claims, consolidation under Section 1407 is not proper.

A.      **Discovery efficiency does not favor consolidation**

The unique posture of Paraquat litigation weighs against consolidation because much of the discovery efficiency that would normally factor in favor of MDL formation does not exist. Although the Holyfield case (which is first federal court case in the group pending before this Panel) was filed in July 2020, litigation involving Paraquat has been proceeding in state court actions since September 2017. As a result, much of the initial discovery that would normally be sought as part of a consolidated MDL proceeding has already been produced and conducted in the Illinois state court cases.

In fact, it appears that coordination is already being accomplished between the pending state court actions. State court cases in Illinois have proceeded to the point of being on the eve of trial that is to begin next month. See Exhibit 2 (Hoffman docket sheet). At the same time, a consolidated group of cases pending in Contra Costa County, California, have been coordinating discovery with the Illinois cases. See Exhibit 3 (Joint Case Mgmt. Statement Dec. 11, 2020). Where discovery from these earlier-filed cases can be utilized, centralization under Section 1407 provides less benefit and efficiency and, ultimately, is not necessary. See e.g. *In re: Cymbalta (Duloxetine) Products Liability Litigation*, 65 F. Supp.3d 1393, 1394 (J.P.M.L. 2014)("[T]he record shows that most, if not all, of the common discovery has already taken place in those earlier-filed actions.")("*In re: Cymbalta*").

These facts were not provided to the Panel by Movant and there is no discussion of alternatives to consolidation by Movant in his brief. *Compare In re: General Motors,* -- F. Supp.3d --, 2021 WL 1220771 at \*2. ( ". . . movants have not demonstrated consideration of alternatives to centralization . . ."). There is nothing preventing federal courts where Paraquat

cases have been filed from ordering similar coordination with state court proceedings should the

judge in that district feel the efficiencies offered by coordination are beneficial.

Furthermore, the same law firms represent various plaintiffs spread out over the United

States.  For example, Fears Nachawati, PLLC, represents the Movant (*Radoczy,* Case No. 3:21-

cv-02028 (N.D. Calif)) as well as the plaintiffs in *Kearns*, Case No. 3:21-cv00278 (S.D. Ill),

*Turner*, Case No. 2:21-cv-00211 (S.D. West Va.), and *Tenneson*, Case No. 3:21-cv-00231 (W.D.

Wis.).  Similarly, Andrus & Wagstaff represents the plaintiffs in *Denes*, Case No. 3:21-cv-02416

(N.D. Calif.), *Majors*, Case No. 3:21-cv-02494 (N.D. Calif.), and *Barrat*, 3:21-cv-50 (N.D. West.

Va.).  The law firms involved in these cases represent multiple plaintiffs in multiple jurisdictions.

The overlap of counsel makes coordination between courts without the need for centralization

under Section 1407 easier to achieve.

### B.      Common issues do not warrant consolidation

There is no question that there are common factual issues related to the various cases

involving allegations that a particular individual has Parkinson's disease caused by exposure to

Paraquat.  However, this Panel has repeatedly concluded that commonality of factual or legal

issues is not, by itself, sufficient to warrant consolidation under Section 1407.  See e.g. *In re:*

*Linear Gadolinium-Based Contrast Agents Products Liability Litigation*, 341 F. Supp.3d 1381,

1382 (J.P.M.L. 2018)("*In re: Linear Gadolinium*")("Certainly, most of these actions, which are

all personal injury cases, involve some common factual issues concerning the manufacture,

regulatory approval, labeling, and marketing of gadolinium-based contrast agents . . . and the

propensity of GBCAs to cause the retention of gadolinium in the bodies of patience with normal

kidney function.").  See also *In re: Cymbalta*, 65 F. Supp.3d at 1393 ("Unquestionably, these

actions share factual issues concerning Cymbalta's development, marketing, labeling, and sale.

Nevertheless, we are not convinced that centralization under Section 1407 is warranted in these circumstances.").

Here, the situation is factually similar to those in *In re: Linear Gadolinium*. In these cases, the injuries, exposure history, and medical histories will be highly plaintiff-specific. While there are common issues regarding causation and corporate conduct – those general issues do not overwhelm these cases to the point where consolidation is the only avenue to efficiency and conservation of resources.

In the motion to consolidate and transfer, Movant states that centralization is needed in order to "ensure consistent pretrial rulings and efficient use of judicial resources." Doc. 2-1 at pg. 6. These two general points can be made with respect to virtually every potential MDL that comes before this Panel. "[M]erely to avoid [different] federal courts having to decide the same issue is, by itself, usually not sufficient to justify Section 1407 consolidation." *In re Route 91 Harvest Festival Shootings in Las Vegas, Nevada, On October 1, 2017*, 347 F. Supp.3d 1355, 1357 (J.P.M.L. 2018)("*In re Route 91*")(bracketed material contained in original).

The discussion of the Panel in *In re: General Motors* is relevant in this instance. "This litigation is in its nascent stages, and movants have not demonstrated consideration of alternatives to centralization aside from Section 1404 transfer. It may be that informal cooperation among the relatively few involved parties and courts is another practicable alternative to centralization."  -- F. Supp.3d --, 2021 WL 1220771 at *2

Furthermore, the "common issues" identified by Movant are not nearly as common as suggested to this Panel. For example, Movant suggests that common questions such as whether Paraquat is defective, whether defendants, failed to adequately test, breached a duty owed to the plaintiffs, failed to warn, or breached certain warranties are issues that must be determined under

the laws of each state.

However, there is no common definition of product defect.  See e.g. M.A.I. 25.04

(Missouri standard for product defect is whether product is "in a defective condition

unreasonably dangerous when put to a reasonably anticipated use."); *Ostendorf v. Clark Equip.*

*Co.*, 122 S.W.3d 530, 535 (Ky. 2003)(Kentucky standard for product defect is risk-utility test);

*Woods v. Fruehauf Trailer Corp.*, 765 P.2d 770, 774 (Okla. 1988)(Oklahoma standard for

product defect is consumer expectation test).  Fifteen states apply only the consumer expectation

test to strict liability claims, while eighteen states use the risk-utility test.  See Masterman,

Clayton J. and Viscusi, W. Kip (2020) "The Specific Consumer Expectations Test for Product

Defects," *Indiana Law Journal*, Vol. 95, Iss. 1, Art. 5, at pg. 187-88 fn. 16-18.  Not all

jurisdictions recognize strict liability. See e.g. *Smith v. Fiber Controls Corp.*, 268 S.E.2d 504,

509-10 (N.C. 1980); *Cline v. Prowler Indus. of Maryland, Inc.*, 418 A.2d 968, 971 (Del. 1980);

*Pelc v. Bendix Mach. Tool Corp.* 314 N.W.2d 614, 620 (Mich. 1981).

Even standards for negligence vary from jurisdiction to jurisdiction. Compare M.A.I.

11.10 (defining the standard of care for manufacturers of certain products as being the "skill and

learning that an ordinarily careful expert in defendant's business would use under the same or

similar circumstances.") with *Bullock v. Gulf & W. Mfg.*, 340 N.W.2d 294, 295-96 (Mich.

1983)(defining standard of care for manufacturers as duty to plan and design a product that is

reasonably safe for its intended purpose.).

As recognized with the *In re: Gadolinium* cases, the fact that common issues exist among

cases is not, by itself, a basis for Section 1407 consolidation.  314 F. Supp.3d at 1382.  Even the

one truly "common" issue – general causation – was identified by the Panel in the *In re:*

*Gadolinium* decision as being a relevant consideration, but consolidation was denied.  *Id.*

("Certainly, most of these actions, which are all personal injury cases, involve some common factual issues . . . and the propensity of GBCAs to cause the retention of gadolinium in the bodies of patients with normal kidney function.")

In this instance, the plaintiff-specific issues will predominate with respect to medical history, family history, exposure history, and the like.  Just as in the *In re: Gadolinium* cases, centralization will not provide the convenience and efficiencies to merit consolidation under Section 1407.  *Id*.

> C.      **The number of cases do not warrant consolidation**

Movant states that "centralization is especially appropriate in this litigation because it is already national in scope, with at least fourteen actions pending in six different federal district courts."  Doc. 2-1 at pg. 10.  As the *In re: Gadolinium* decision shows, this caseload alone is not a sufficient reason for consolidating cases under Section 1407.  The Panel in *In re: Gadolinium* decided against consolidation where there were (according to the schedule of cases) 22 cases pending at that time spread across 13 different federal districts.  341 F. Supp.3d at 1382-83.

Movant also suggests that this Panel should consider the possibility of additional cases being filed as a reason to conclude consolidation is appropriate in this instance.  See Doc. 2-1 at pg. 10.  Movant cites *In re Camp Lejeune, NC Water Contamination Litigation*, 763 F. Supp.2d 1381 (J.P.M.L. 2011), in support of the proposition that the potential for additional cases being filed as a factor supporting consolidation.  In more recent decisions, however, this Panel has been "disinclined to take into account the mere possibility of future filings in [its] centralization calculus." *In re: General Motors*, -- F. Supp.3d --, 2021 WL 1220771 at *2.

### III.    VENUE FOR CONSOLIDATION

If this Panel decides in favor of centralization under section 1407, the Holyfields suggest that the MDL be located in the Eastern District of Missouri before the Honorable John Ross.

Paraquat has been widely used throughout the United States.  Because of this, cases may be filed in districts across the country.  While it is *possible* to access the Northern District of California by air travel – it can hardly be considered easy to access for those in the Midwest, much less those who would be traveling from the East coast.

The first-filed Paraquat case in federal court was in the Eastern District of Missouri.  As St. Louis, Missouri, has an airport with daily flights from across the country, the Eastern District of Missouri – because it is centrally located – would be *more* accessible than the Northern District of California.  Judge Ross has the advantage of having already dealt with the issue of preemption under FIFRA.  This district has been the site of similar MDL proceedings and would be an appropriate venue for consolidated proceeding for these cases.  See e.g. *In re Dicamba Herbicides Litigation,* 1:18-md-2820-SNLJ; *In re Genetically Modified Rice Litigation*, 4:06-md-1811.

The Holyfields also request the Eastern District of Missouri and before Judge Ross because – as their case has been on file much longer than the newly-filed cases – Judge Ross can decide whether their case would proceed as part of the general MDL group, or could be allowed to proceed ahead given that discovery is ready to begin for that case.  There is precedent for exactly this type of procedure that recently took place in the dicamba litigation pending before the Honorable Stephen Limbaugh.

The *Bader Farms* case, that went to trial recently, was filed well before the other dicamba crop damage cases that were consolidated before Judge Limbaugh.  While still considered part of

the MDL proceeding, the *Bader Farms* case was permitted, in Judge Limbaugh's discretion, to proceed with its own scheduling order and discovery schedule. Simply put, the Holyfields want their case to proceed to a prompt resolution. Given that the majority of the newly-filed cases have yet to obtain service, progress in their individual case will be dramatically delayed by MDL consolidation.

Finally, in the event that this Panel determines that, based on other considerations, the Eastern District of Missouri is not the venue of choice for these cases, the Southern District of Illinois in front of Judge Nancy J. Rosenstengel would also be an outstanding choice for a consolidated proceeding for the Paraquat litigation. The Southern District of Illinois also benefits from the central location of the St. Louis airport. The Southern District of Illinois benefits from the close proximity to the significant number of state court cases currently pending in Illinois. Most important, Judge Rosenstengel is an accomplished judge who will be able to move these cases to resolution.

## IV.   CONCLUSION

For the reasons stated above, Plaintiffs Henry Holyfield and Tara Holyfield respectfully request that the motion to consolidate pursuant to 28 U.S.C. § 1407 be denied. Alternatively, the Holyfields request that this Panel consolidate these proceedings in the United States District Court for the Eastern District of Missouri before Judge John Ross or the United States District Court for the Southern District of Illinois before Judge Nancy J. Rosenstengel.

Respectfully submitted

/s/ *Steven E. Crick*

**Steven E. Crick        MO Bar No. 32654**
**HUMPHREY FARRINGTON & McCLAIN, PC**
221 W Lexington, Suite 400
Independence, MO 64050
Telephone:  816-836-5050
Fax:  816-836-8966
sec@hfmlegal.com

**Attorney for Plaintiffs Henry Holyfield and Tara**
**Holyfield (Case No. 1:20CV00165, E.D. Mo.)**

11