**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: PARAQUAT PRODUCTS LIABILITY LITIGATION** | **MDL No. 3004** |

**INTERESTED PARTY RESPONSE IN SUPPORT OF COORDINATED OR
CONSOLIDATED PRETRIAL PROCEEDINGS BEFORE THE
SOUTHERN DISTRICT OF ILLINOIS**

## INTRODUCTION

Plaintiffs James and Judith Hemker, Barbara Piper, and Terry Runyon (collectively "Plaintiffs")[1] support the consolidation of the Actions[2] in an MDL before the United States District Court for the Southern District of Illinois. The Movant and several responding parties assert that consolidation is appropriate. Plaintiffs agree. The Actions all involve the same product, defendants, claims, causation issues, and injury. Not surprisingly, this considerable overlap means the same documents, witnesses, and experts will be relevant in each case. Consolidation will streamline discovery, conserve resources and minimize inconsistent rulings.

The forum best suited to achieve these goals is the Southern District of Illinois. That court is already home to 18 of the 49 pending Actions, which are consolidated before Chief Judge Nancy Rosenstengel, a respected jurist with considerable experience handling complex litigation. Moreover, the Southern District of Illinois does not currently have any MDLs, so it is ready and able to manage multidistrict litigation effectively and efficiently. The Southern District

---

[1] James and Judith Hemker are Plaintiffs in *Hemker v. Syngenta Crop Protection, LLC*, Case No. 3:21-CV-00211 (S.D. Ill.); Barbara Piper is Plaintiff in *Piper v. Syngenta Crop Protection, LLC*, Case No. 3:21-CV-00228 (S.D. Ill.); and Terry Runyon is Plaintiff in *Runyon v. Syngenta Crop Protection, LLC*, Case No. 3:21-CV-00229 (S.D. Ill.).

[2] "Actions" collectively means each lawsuit identified in the Schedule of Actions submitted with Movant's opening brief, (Dkt. 1-2), as well as any subsequently filed tag-along actions.

1

of Illinois is also centrally located and convenient for parties and witnesses spread across the United States. All of these factors support the selection of the Southern District of Illinois as the transferee forum.

But what truly sets the Southern District of Illinois apart is its connection to *Hoffmann v. Syngenta Crop Protection, LLC*, No. 17-L-517, a paraquat case set for trial in just **11 days** in the 20th Judicial Circuit Court of St. Clair County, Illinois, a state court encompassed within the Southern District of Illinois' boundaries. *Hoffmann*, filed by Korein Tillery, LLC in 2017 after years of investigation, is at the forefront of paraquat litigation nationwide. There is no case— state or federal—more advanced. *Hoffmann* has involved:

- the production of 7.28 million documents, for a total of 59.2 million pages;

- 89 depositions, with 46 taken by plaintiffs and 43 taken by defendants;

- 20 days' worth of corporate designee depositions, generating nearly 5,000 transcript pages;

- 33 experts, 17 disclosed by plaintiffs and 16 disclosed by defendants; and

- a team of 29 individuals at Korein Tillery, including lawyers, biochemists, scientists and staff who have devoted over 155,000 hours to developing and preparing the case.

(Ex. A, Decl. of Stephen Tillery at ¶¶6-8.) Even in paraquat cases filed elsewhere, the parties are relying on the discovery generated in *Hoffmann.* Simply put, the *Illinois* lawsuit is paving the way for all others.

MDL courts are encouraged, wherever possible, to coordinate state and federal case discovery and, whenever practicable, to make use of prior discovery in an MDL action. Here, the Southern District of Illinois is perfectly positioned to do both. Chief Judge Rosenstengel is already familiar with paraquat litigation and presides less than half an hour away from her state court counterpart in *Hoffmann* (as well as judges presiding over other, pending Illinois state

cases). She is well-situated to evaluate the existing *Hoffmann* evidence, determine how to maximize its use in the MDL, and, in turn, swiftly move Plaintiffs' cases toward resolution.

Notably, a portion of the discovery used in *Hoffmann* was generated as a result of Korein Tillery's work in three prior Illinois cases against Syngenta that started nearly seventeen years ago: (1) *Holiday Shores Sanitary Dist. v. Syngenta Crop Protection, Inc.*, No. 2004-L-710 (Madison County, Illinois); (2) *City of Greenville v. Syngenta Crop Protection, Inc.,* No. 10-CV-188-JPG-PMF (S.D. Ill.); and (3) *Doe. v. Syngenta Crop Protection, LLC*, No. 13-L-425 (St. Clair County, Illinois).[3] The Southern District of Illinois retains jurisdiction over *City of Greenville*, (*City of Greenville*, Dkt. 325 at ¶22), and a Protective Order entered in *Hoffmann* provides that discovery produced and depositions taken in Korein Tillery's three prior cases "shall be deemed to have been produced in [*Hoffmann*] and shall be subject to" the Order. (Ex. B, Protective Order at ¶20). Given the breadth and scope of discovery in *Hoffmann*, there is little doubt it will play a significant role in the federal cases as they proceed. This evidentiary thread—connecting *City of Greenville* and Korein Tillery's other Illinois-based lawsuits to the *Hoffmann* litigation and, now, to the current federal paraquat docket—is unique to the Southern District of Illinois.

When all of these factors are taken into account, the Southern District of Illinois emerges as the clear choice for a paraquat-focused MDL.

## ARGUMENT

## I.      CONSOLIDATION IS APPROPRIATE.

Under 28 U.S.C. §1407, consolidation is appropriate when "civil actions involving one or more common questions of fact are pending in different districts [and] transfers for such

---

[3] Both Madison County, Illinois and St. Clair County, Illinois are within the Southern District of Illinois. *See* https://www.ilsd.uscourts.gov/Counties.aspx.

proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." Movant's opening brief and several of the responses filed to-date contend that consolidation is appropriate. Plaintiffs agree and incorporate the arguments made by those parties as if they were set forth here.[4]

## II. THE ACTIONS SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF ILLINOIS.

### A. The Southern District of Illinois Is Uniquely Situated to Coordinate Between the MDL and the Most Advanced Paraquat Case in the Nation, *Hoffmann*.

MDLs are designed to maximize efficiency, conserve resources, and eliminate inconsistent rulings through coordinated discovery and pretrial motion practice. Oftentimes, there are parallel state court proceedings underway that involve the same product and parties. When that occurs, the Panel routinely considers which transferee forum is best situated to facilitate coordination between *all* matters, state and federal.[5]

Here, that forum is the Southern District of Illinois. The District encompasses St. Clair County, where *Hoffmann* is set for trial in less than two weeks. (Ex. A, Tillery Decl. at ¶¶4-5). As outlined above, *Hoffmann* is the product of nearly nine years of work by a team of 29

---

[4] *See,* Dkt. 1-1 at p. 6-12; Dkt. 7 at p. 4-5; Dkt. 11 at p. 3-4; Dkt. 16 at p. 3-4 & Dkt. 22 at p. 2.

[5] *See, e.g., In re General Motors Corp. Securities & Derivative Litig.,* 429 F.Supp.2d 1368, 1370 (J.P.M.L. 2006) ("since Michigan is the situs of related state court proceedings…centralization in the Eastern District of Michigan carries the added benefit of fostering coordinated discovery between the federal and state proceedings"); *In re Tri-State Crematory Litig.,* 206 F.Supp.2d 1376, 1377-1378 (J.P.M.L. 2002) ("centralization of the actions pending in federal court will facilitate coordination with the numerous related actions pending in various state courts"); *In re Bomb Disaster,* 399 F. Supp. 1400, 1403 (J.P.M.L. 1975) ("since several actions are pending in California state courts, transfer of all federal actions to California will provide an opportunity for the federal and California state courts to coordinate the discovery efforts…and thereby greatly facilitate the processing of the various actions arising out of the explosions"); *In re Air Crash Disaster,* 352 F. Supp. 968, 969 (J.P.M.L. 1972) ("Transfer of all federal actions to the District of Kansas, therefore, provides a unique opportunity for the federal and Kansas state court parties to coordinate…Such state-federal accommodation in discovery will significantly lessen the burdens on both courts' judicial resources and greatly enhance the expeditious processing of all actions arising out of the crash.").

lawyers, scientists and staff at Korein Tillery. (*Id.* at ¶¶6-7). These individuals have dedicated over 155,000 hours to investigating, developing, and preparing the case for trial. (*Id*. at ¶7). *Hoffmann* has involved nearly 60 million pages of documents, 89 depositions, 20 days of corporate designee testimony, and 33 expert witnesses. (*Id.* at ¶8). It represents a Herculean discovery effort.

No other paraquat case in the United States, state or federal, is even remotely as advanced as *Hoffmann*. In fact, many pending lawsuits are simply adopting discovery from *Hoffmann* rather than attempting a similar effort. For example, in the coordinated California state court proceedings for paraquat, the parties stipulated that depositions taken in the Illinois state cases were deemed taken in the California lawsuits, and also entered into a protective order providing that documents and transcripts produced in the Illinois matters were deemed produced in the California cases as well. (Ex. C, Stip. Regarding Use of Depos. From Illinois Actions at p. 2; Ex. D, Protective Order at ¶11). This reliance demonstrates that even in alternative forums with pending paraquat cases, it is the *Illinois* litigation leading the way, with other parties and courts leveraging the work performed in *Hoffmann*.

There can be little doubt that whether and to what extent discovery from *Hoffmann* is utilized in the federal actions will be a major consideration for the presiding MDL judge. The *Manual for Complex Litigation* strongly encourages the use of prior discovery to streamline subsequent federal proceedings. *See Manual for Complex. Litig.* at §20.313. The *Manual* suggests, among other things:

- creating joint federal-state, plaintiff-defendant document depositories, accessible to attorneys in all states;
- ordering discovery materials from prior state and federal cases to be included in the document depository;
- designating state-conducted depositions as official MDL depositions;

- adopting standard interrogatories developed by state judges for litigation in their cases; and

- coordinating rulings on discovery disputes, such as the assertion of privilege, and using parallel orders to promote uniformity to the extent possible.

*Id.* Utilizing discovery from *Hoffmann* would benefit the parties (who need not reinvent the wheel with duplicative document productions and depositions) as well as the courts (who may avoid the disputes and motion practice so often affiliated with extensive, hard-fought discovery). But most importantly, making significant use of *Hoffmann's* documents, witnesses and experts would fast-track the claims of plaintiffs nationwide.

No other forum possesses the same unique ties to *Hoffmann* and its predecessors—*Holiday Shores, Doe,* and *City of Greenville*—whose discovery was used in *Hoffmann* and will, in turn, be used in the MDL cases. Just over 1.5 million documents, totaling roughly 19 million pages, from those three cases were reproduced in *Hoffmann* and will, presumably, also be used in any federal paraquat litigation. (Ex. A, Tillery Decl. at ¶9). As noted above, the Southern District of Illinois retains jurisdiction over *City of Greenville*, and its boundaries also encompass the judicial circuits where *Holiday Shores* and *Doe* were resolved. Thus, to the extent issues arise with *Hoffmann* discovery that originated with *Holiday Shores, Doe,* and/or *City of Greenville,* the Southern District of Illinois is in the best position to coordinate among the state and federal courts familiar with those lawsuits.

This unique history and procedural posture makes an Illinois-based MDL best suited to coordinate federal and state discovery, including the use of *Hoffmann* evidence in the federal MDL. These factors favor selecting the Southern District Court of Illinois.

    **B.**    **The Southern District of Illinois and Chief Judge Rosenstengel Have the Experience and Capacity to Preside Over an MDL.**

The Southern District of Illinois is well-versed in handling MDL proceedings that

encompass thousands of individual cases. *See, e.g., In re Yasmin*, MDL No. 2100 (S.D. Ill.) (over 11,000 cases); *In re Pradaxa Prod. Liab. Litig.*, MDL No. 2385 (S.D. Ill.) (over 2,500 cases). At present, however, neither the Southern District of Illinois nor Chief Judge Rosenstengel have any pending MDLs, whereas the other proposed forums, the Northern District of California and the Eastern District of Missouri, have 20 and 3 MDLs, respectively.[6] This factor also favors the Southern District of Illinois as the transferee forum. *See In re Regions Bank ATM Fee Notice Litig.*, 763 F. Supp. 2d 1372, 1373 (J.P.M.L. 2011) (selecting district where judge is not currently presiding over an MDL and has a favorable caseload); *In re Yasmin & Yaz Mktg., Sales Practices & Prods. Liability Litig.*, 655 F.Supp.2d 1343, 1344 (J.P.M.L. 2009) (selecting Southern District of Illinois and "experienced transferee judge who is not currently presiding over another multidistrict litigation docket and who has a caseload favorable to accepting this assignment.")

Moreover, Chief Judge Rosenstengel is an ideal choice as the presiding judge. She is a respected jurist with significant experience handling complex cases. *See, e.g., Impressions Salon, Inc. v. Nat'l Milk Producers Federation*, No. 3:13-cv-00454 (S.D. Ill.); *Marion HealthCare, LLC v. Becton Dickinson & Co.*, No. 3:18-cv-01059 (S.D. Ill.); *Butler v. Jimmy John's Franchise, LLC*, No. 3:18-cv-00133 (S.D. Ill.) Particularly relevant here, Chief Judge Rosenstengel is already presiding over 7 paraquat cases and entered a standing order that any additional paraquat lawsuits be automatically assigned to her. (Ex. E, Admin. Order No. 289, filed 3/26/21). Her existing familiarity with the parties and subject matter make her well-suited to evaluate whether and to what extent discovery from *Hoffmann* should be used in an MDL. Furthermore, her location would facilitate communication with the judges presiding over *Hoffmann* and other

---

[6] *See* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-April-15-2021.pdf. Additionally, one of the pending Northern District of California MDLs is proceeding before Judge Edward Chen, who is currently presiding over the paraquat cases in that district. *Id.*

Illinois-based cases. Judge Rosenstengel's complex litigation experience and paraquat knowledge make her uniquely qualified to preside over this MDL, should the Panel opt for consolidation.

In the event the Panel assigns another pending matter to Chief Judge Rosenstengel and concludes that Chief Judge Rosenstengel should not be assigned two MDLs, Plaintiffs alternatively request assignment to Judge Staci M. Yandle in the Southern District of Illinois. Judge Yandle is an experienced jurist who, like Chief Judge Rosenstengel, has no currently pending MDLs and who, like Chief Judge Rosenstengel, is best situated to manage coordination of discovery between the paraquat cases in federal court and the significantly advanced Illinois state court cases that form the basis of the claims and discovery in all paraquat cases nationwide. In addition, Judge Yandle has not yet had the opportunity to preside over an MDL, a factor the Panel often considers in order to develop a deeper bench of jurists in the future with MDL experience. *See, e.g., In re 21st Century Oncology Customer Data Security Breach Litig.*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L 2016).

## C. The Southern District of Illinois is Centrally Located and Convenient for this Nationwide Litigation.

The relevant parties and witnesses are located across the country, a fact that undermines Movant's contention that Chevron's affiliation with California is a deciding factor. (Dkt. 1-1 at p. 12-13). Defendants are headquartered and/or incorporated in Switzerland, Delaware, North Carolina, Pennsylvania, and California, a level of geographic diffusion that does not favor any particular one of those districts. *See*, *e.g.*, *In re StarLink Corn Prod. Liab. Litig.*, 152 F. Supp. 2d 1378, 1380-81 (J.P.M.L. 2001) (explaining that "no single district stands out as the geographic focal point for this litigation comprised of claims with putative nationwide classes and parties and witnesses dispersed in various parts of the United States"). Moreover, as the Panel can

surmise from the work already done in *Hoffmann*, witnesses and experts affiliated with this case are found coast to coast, from California to Maryland and many states in between. Specifically, fifteen witnesses reside in the Southern District of Illinois, seven witnesses reside elsewhere in Illinois, and various others are located in Massachusetts, California, Maryland, Pennsylvania, Virginia, Indiana, New York, New Hampshire, New Mexico, Oregon, Ohio, Michigan, Washington, and Missouri. (Ex. A, Tillery Decl. at ¶10). To the extent there is a center of gravity for physical evidence, however, that is undoubtedly Illinois, where documents, transcripts, and exhibits were comprehensively collected for *Hoffmann*.

In such situations, the Panel frequently selects a transferee district that is centrally located and easily accessible for all parties. *See, e.g., In re Samsung Top-Load Washing Mach. Mktg., Sales Practice & Prods. Liability Litig.*, 278 F. Supp. 3d 1376, 1378 (J.P.M.L. 2017) (selecting district "centrally located relative to the geographically dispersed domestic defendants"); *In re: Stand N'Seal Prods. Liability Litig.*, 469 F. Supp. 2d 1351, 1352 (J.P.M.L. 2007) (selecting district because it was "easily accessible" and "two of the five corporate defendants" were located there); *In re Circular Thermostat Antitrust Litig.*, 370 F. Supp. 2d 1355, 1357 (J.P.M.L. 2005) (selected district that was "an accessible, metropolitan location" for geographically diverse parties).

Here, the Southern District of Illinois is a centrally located choice that, given its proximity to St. Louis, Missouri, is easily accessible to all Parties. The Panel has acknowledged as much when assigning other MDLs to that District. *See, e.g., In re Pradaxa Prods. Liability Litig.*, 883 F. Supp. 2d 1355, 1356 (J.P.M.L. 2012) (selecting Southern District of Illinois where "[t]hirteen of forty related actions…are pending in the district [and its] geographically central location and accessibility also commend it for this nationwide products liability litigation");

*Yasmin*, 655 F. Supp. 2d at 1344 ("This district also provides a geographically central forum for this nationwide litigation in which actions are pending in various districts across the country."); *In re Gen'l Motors Corp. DRX-Cool Prods. Liability Litig.*, 293 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003) ("This district is centrally located in relation to the parties, anticipated documents and witnesses . . . Also, three of the eight presently pending actions are already there."). Given that the witnesses and experts are scattered across the nation, the Southern District of Illinois' central location and easy accessibility favor its selection as the MDL forum.

## CONCLUSION

The Southern District of Illinois is the nerve center of paraquat litigation. The *Hoffmann* case set to be tried in that district's boundaries is poised to become the first paraquat lawsuit tried in the United States, and the Southern District of Illinois has distinct and longstanding ties to the cases and evidence that will play a major role in any MDL. Chief Judge Rosenstengel is already presiding over a coordinated paraquat docket, so she is familiar with the parties, issues, and evidence. This, combined with her proximity to the Illinois state courts at the forefront of paraquat litigation, make her uniquely positioned to coordinate state and federal proceedings, maximize the productive use of *Hoffmann* discovery, and ensure that Plaintiffs—themselves residents of Illinois and neighboring states—receive the most efficient, effective, and prompt justice possible. For these reasons, the Panel should consolidate the Actions in the Southern District of Illinois before Chief Judge Nancy Rosenstengel. If the Panel assigns another pending MDL to Chief Judge Rosenstengel and concludes that assignment of two MDLs at the same time would be inappropriate, the Panel should alternatively consolidate the Actions in the Southern District of Illinois before Judge Staci Yandle.

Dated:  April 29, 2021

Respectfully submitted,

BY: /s/  Jamie L. Boyer_____
Jamie L. Boyer (S.D. IL #6281611)
KOREIN TILLERY, LLC
One U. S. Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525
JBoyer@koreintillery.com