**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

IN RE: PARAQUAT PRODUCTS       )       MDL NO. 3004
LIABILITY LITIGATION             )

**DEFENDANT CHEVRON U.S.A. INC.'S RESPONSE TO
THE MOTION TO TRANSFER RELATED ACTIONS FOR
<u>COORDINATED PRETRIAL PROCEEDINGS</u>**

Defendant Chevron U.S.A. Inc. ("CUSA") does not oppose consolidation for pretrial proceedings in a suitable forum of the pending federal cases related to paraquat and Parkinson's disease that have been filed against CUSA and other defendants (the "Related Actions"). If the United States Judicial Panel on Multidistrict Litigation (the "Panel") elects to consolidate for pretrial purposes, CUSA supports the Eastern District of Missouri as the suitable forum. That District is the location of the earliest-filed and most advanced Related Action. That District has the experience, skill, and current capacity to handle this MDL. At least two plaintiffs also support centralization in that District. Additionally, the Eastern District of Missouri is a geographically convenient forum for this MDL. Finally, documents produced in paraquat-related litigation are housed and hosted with CUSA's counsel in that District. The District of Minnesota and Northern District of Texas also present reasonable alternatives. Those Districts are conveniently located and have the experience and capacity to handle this MDL.

The Panel should not consolidate an MDL in either the Northern District of California or the Southern District of Illinois. The former is geographically inconvenient to nearly all the parties and attorneys, is experiencing a

disproportionately high active caseload, and has judicial vacancies that pose "judicial emergencies." Assignment of an MDL of the potential size, complexity, and likely workload as reflected in the Related Actions risks having a disproportionately large impact on the judicial resources, and potentially overwhelming, the Southern District of Illinois.[1]

## BACKGROUND

To date, plaintiffs have filed 55 cases in 12 different judicial districts. The first federal complaint was filed July 22, 2020, in the Eastern District of Missouri. *See Holyfield v. Chevron U.S.A., et al.*, No. 1:20-cv-00165 (E.D. Mo. Jul. 22, 20).

Plaintiffs began filing paraquat-related cases in other federal courts in districts around the country on February 23, 2021—seven months after *Holyfield*. Thus far, plaintiffs have filed 15 cases in the Northern District of California, though none of those plaintiffs allege they reside in that district or even in California. Plaintiffs filed another 19 cases in the Southern District of Illinois. Nine cases were filed in the District of Minnesota. Four cases are pending in the Eastern District of Missouri. Those four cases are currently in front of Judge Ross and Judge Schelp. *See Holyfield v. Syngenta*, No. 1:20-cv-00165 (Ross, J.); *Adams v. Syngenta*, No. 2:21-cv-00029 (Schelp, J.); *McCarty v. Syngenta*, No. 2:21-

---

[1] CUSA reserves the right to request transfer to an appropriate court for trial pursuant to *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).

cv-00030 (Schelp, J.); *Hays v. Syngenta*, No. 2:21-cv-00031 (Schelp, J.).  And seven cases have been filed in seven other districts—each with one case.

On April 7, 2021, Paul Rakoczy, a New Jersey resident who filed suit in the Northern District of California, filed a motion with this Panel to transfer the Related Actions for coordinated pretrial proceedings, requesting centralization before Judge Chen in the Northern District of California.  Other Plaintiffs subsequently requested coordination in other districts, including in the Eastern District of Missouri before Judge Limbaugh, Judge Perry, or Judge Ross.  *See* Adams Resp. at 3-5 (Apr. 16, 2021), ECF No. 24; *see also* Holyfield Resp. at 1 (Apr. 29, 2021) ECF No. 57 (requesting Judge Ross, if the Panel consolidates).

Most of the complaints name Syngenta Corporation and Syngenta Crop Protection LLC, which together comprise an agricultural company in Greensboro, NC; those entities' parent is Syngenta AG, which is located in Basel, Switzerland They also name CUSA, a company headquartered in San Ramon, CA.

## ARGUMENT

Under 28 U.S.C. § 1407, the Panel may transfer civil actions "involving one or more common questions of fact" that are "pending in different districts" to any district for consolidated pretrial proceedings.  However, the transfer will be granted only if the Panel determines it would be "for the convenience of parties and witnesses" and would "promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a). CUSA agrees that consolidation for pretrial proceedings is warranted and would promote justice and efficiency in judicial administration.

The choice of the transferee court "must be made in consonance with the underlying statutory goal of Section 1407(a): 'the convenience of parties and witnesses [to] promote the just and efficient conduct of such actions.'" WRIGHT & MILLER, 15 FED. PRAC. & PROC. JURIS. § 3864 (4th ed.).  The objectives of transfer are "to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts."  FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION, § 20.131 (4th ed.); *see also In re RAH Color Technologies LLC Patent Litig.*, 347 F. Supp. 3d 1359, 1360 (J.P.M.L. 2018).  Transfer "is to be ordered only where significant economy and efficiency in judicial administration may be obtained."  H.R. Rep. No. 90-1130 at p. 1, reprinted in 1968 U.S. Code Cong. & Admin. News pp. 1898, 1900.

## I.   The most appropriate forum is the Eastern District of Missouri.

### a.   The Eastern District of Missouri has the earliest filed and most advanced federal action.

CUSA agrees with multiple plaintiffs that coordination in the Eastern District of Missouri before Judge Ross is appropriate.  *See* Adams Resp. at 3-5 (Apr. 16, 2021), ECF No. 24; Holyfield Resp. at 1 (Apr. 29, 2021) ECF No. 57 (requesting consolidation with Judge Ross if the Panel determines consolidation is proper).

The Eastern District of Missouri is the site of the first-filed and most advanced federal case.  The Panel routinely selects a district where cases are the most advanced.  *See, e.g.*, *In re Park W. Galleries, Inc., Mktg. & Sales Practices Litig.*, 645 F. Supp. 2d 1358, 1360 (J.P.M.L. 2009) (sending to district where "action

is measurably more advanced"); *In re Int'l House of Pancakes Franchise Litig.*, 331 F. Supp. 556, 557 (J.P.M.L. 1971) ("The *primary* reason for selecting the Western District of Missouri is the fact that the Missouri cases are in a significantly more advanced stage than are those in any other district.") (emphasis added); *see also In re Glaceau VitaminWater Marketing and Sales Practices Litig.*, 764 F. Supp. 2d 1349, 1351 (J.P.M.L. 2011) (ordering transfer to district where "[t]he court has ruled on a motion to dismiss, and discovery is underway"); *In re Standard Auto. Corp. Retiree Benefits "ERISA" Litig.*, 431 F. Supp. 2d 1357, 1358 (J.P.M.L. 2006) (selecting district where "first-filed action is pending"); *see also In re Dicamba Herbicide Litig.*, 289 F. Supp. 3d 1345, 1347 (J.P.M.L. 2018) (selecting forum with earliest-filed cases); *In re: Roundup Products Liability Litig.*, 214 F. Supp. 3d 1346, 1348 (J.P.M.L 2016) (selecting forum with earliest-filed cases); *In re Hyundai & Kia Fuel Econ. Litig.*, 923 F. Supp. 2d 1364, 1366 (J.P.M.L. 2013) ("procedurally advanced").

Because the *Holyfield* case in the Eastern District of Missouri in front of Judge Ross is more advanced than the other federal court actions, this factor supports transfer there. *See Holyfield v. Chevron U.S.A., et al.*, No. 1:20-cv-00165 (E.D. Mo. Jul. 22, 20). Indeed, *Holyfield* was filed over seven months before the next Related Action. *See Hemker v. Syngenta Crop Protection, LLC*, No. 3:21-cv-00211 (S.D. Ill. Feb. 23, 2021). Moreover, Judge Ross has heard and ruled on a motion to dismiss, whereas most other actions were filed after Judge Ross decided the *Holyfield* motion to dismiss. Indeed, to date, no responsive pleadings have been

filed in any other case. *See In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, 763 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011) (ordering centralization to the District of Massachusetts rather than the District of New Jersey because "[t]he first-filed action, in which a fully briefed motion to dismiss [was] currently pending, was filed in the District of Massachusetts … months before the New Jersey action was filed").

### b. Convenience and accessibility favor selecting the Eastern District of Missouri.

The Eastern District of Missouri is not only an appropriate forum because of the advanced stage of *Holyfield*, but also because the District is convenient and accessible.

As this Panel has observed, the Eastern District of Missouri is "a geographically central and accessible forum" appropriate for "nationwide litigation." *See, e.g.*, *In re Ashley Madison Customer Data Sec. Breach Litig.*, 148 F. Supp. 3d 1378, 1380 (J.P.M.L. 2015) (transferring five actions and thirteen related actions pending in eleven districts to the Eastern District of Missouri); *In re NuvaRing Products Liab. Litig.*, 572 F. Supp. 2d 1382, 1383 (J.P.M.L. 2008) (centralizing cases in the Eastern District of Missouri as a "readily accessible district"); *In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Pracs. Litig.*, 536 F. Supp. 2d 1369, 1370–71 (J.P.M.L. 2008) (centralizing cases in the Eastern District of Missouri "[g]iven the geographic dispersal of the constituent actions and the potential tag-along actions").

The Eastern District of Missouri and the city of St. Louis are at the relative center of the country.  This location minimizes disparities in time and distance, and accommodates the parties' geographic diversity, particularly as plaintiffs reside in various states.  *See infra* footnote 15.  St. Louis is also highly accessible; Lambert International Airport is a major airport providing 68 nonstop flights across the country.[2]  The Eastern District of Missouri courthouse is just 14 miles from the airport—and travelers are much less likely to encounter traffic or other delays there than in San Francisco.[3]  Likewise, St. Louis's light rail system travels directly from the airport to the Eastern District of Missouri's courthouse,[4] and numerous hotels surrounding the courthouse are available for reasonable prices well under $200 a night.[5]

Moreover, the Eastern District of Missouri is convenient because of CUSA's prior production of paraquat-related documents.  Specifically, extensive written discovery and document productions have been conducted in state-court paraquat cases.  Those documents are housed and hosted with CUSA's *Holyfield* counsel, who mostly practice law and reside in and nearby the Eastern District of Missouri.

---

[2] *See* Non Stop Service, St. Louis Lambert International Airport, https://www.flystl.com/flights-and-airlines/non-stop-service.

[3] *See* Driving Directions from St. Louis International Airport to Thomas F. Eagleton U.S. Courthouse, *Google Maps*, https://bit.ly/3auCg2d.

[4] *See* Transit Directions from St. Louis International Airport to Thomas F. Eagleton U.S. Courthouse, *Google Maps*, https://bit.ly/3tCdJQn.

[5] *See* Hotels by the Thomas F. Eagleton United States Courthouse, *Google Maps*, https://bit.ly/2RQV9pA.

### c. The Eastern District of Missouri has the experience, skill, and capacity to handle this MDL.

The Eastern District of Missouri is well-equipped to manage the Related Actions and has significant experience with complex MDLs.

The Eastern District of Missouri is well equipped to supervise these actions based on the experience of its judges, including Judge Ross. The Panel has transferred nearly two dozen MDLs to the Eastern District of Missouri, three of which are ongoing. *See In re Dicamba Herbicides Litig.*, MDL No. 2820 (Limbaugh, J.); *In re Emerson Electric Co. Wet/Dry Vac Mktg. & Sales Litig.*, MDL No. 2382 (Autrey, J.); *In re NuvaRing Products Liab. Litig*, MDL No. 1964 (Sippel, J.). And the Eastern District of Missouri has overseen several MDLs that, like this one, involve the agricultural sector and pesticide products. *See, e.g.*, *In re Dicamba Herbicides Litig.*, MDL No. 2820; *In re Hops Antitrust Litig.*, MDL No. 706; *In re Genetically Modified Rice Litig.*, MDL No. 1811; *In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Pracs. Litig.*, MDL No. 1907. The opportunity to draw on that experience strongly favors centralization in the Eastern District of Missouri.

The Eastern District of Missouri also has the capacity to handle this MDL. The Eastern District of Missouri has twelve active judges, which provides the district enough capacity to handle an MDL like this. Moreover, unlike the Northern District of California, discussed below, the Eastern District has no judicial emergencies or overwhelming caseloads. This balance of judicial resources and capacity cuts strongly in favor of centralizing the Related Actions in the Eastern District of Missouri—the district with "the necessary resources to be able to devote

the time and effort to pretrial matters that this docket is likely to require." *In re Wireless Tel. 911 Calls Litig.*, 259 F. Supp. 2d 1372, 1374 (J.P.M.L. 2003).

## II. The District of Minnesota and Northern District of Texas are viable alternatives.

The District of Minnesota, currently home to nine Related Actions, and the Northern District of Texas, the home district of Plaintiffs' counsel in 23 Related Actions,[6] offer strong alternatives to the Eastern District of Missouri. Both have historically handled MDLs. And both are in the central time zone, offering convenience for the geographically-dispersed parties, which span from California to Europe.

Minneapolis-St. Paul is highly accessible; Minneapolis-St. Paul International Airport is a major airport servicing 120 nonstop flights across the country.[7] The District of Minnesota courthouse in Minneapolis is just 14 miles from the airport—and travelers are much less likely to encounter traffic or other delays there than in San Francisco.[8] Likewise, Minneapolis' light rail system travels directly from the

---

[6] The Fear Nachwati firm has filed 13 Related Actions and is based in Dallas. The Watts Guerra firm, which has filed ten Related Actions, is also based in Texas.

[7] *See* Flight Connections, Minneapolis-St. Paul International Airport, https://www.flightconnections.com/flights-from-minneapolis-msp

[8] *See* Driving Directions from Minneapolis-St. Paul International Airport to U.S. District Courthouse in Minneapolis, *Google Maps*, https://tinyurl.com/y9b23cap. Similarly, the District of Minnesota courthouse in Minneapolis sits just 14 miles from the airport.

airport to the District of Minnesota's courthouse,[9] and numerous hotels surrounding the courthouse are available for reasonable prices well under $200 a night.[10]

Dallas is also highly accessible; Dallas/Fort Worth International Airport is a major airport servicing 188 nonstop flights across the country.[11]  The Northern District of Texas courthouse in Dallas is just 20 miles from the airport—and travelers are much less likely to encounter traffic or other delays there than in San Francisco.[12]  Likewise, Dallas's light rail system travels directly from the airport to the Northern District of Texas in Dallas,[13] and numerous hotels surrounding the courthouse are available for reasonable prices well under $200 a night.[14]

Both the District of Minnesota or Northern District of Texas are well-equipped and have the capacity to handle this MDL.  The District of Minnesota has had 40 MDLs, with only six pending, and the Northern District of Texas has had 27, with only four pending.  In particular, Judge Ericksen in the District of Minnesota

---

[9] *See* Transit Directions from Minneapolis-St. Paul International Airport to U.S. District Courthouse in Minneapolis, *Google Maps*, https://tinyurl.com/khfa8eyc

[10] *See* Hotels by the U.S. District Courthouse in Minneapolis, *Google Maps*, https://tinyurl.com/jf8bp3rt; *See* Hotels by the U.S. District Courthouse in St. Paul, MN, *Google Maps*, https://tinyurl.com/f7j4r9m9

[11] *See* Flight Connections, Dallas/Fort Worth International Airport, https://www.flightconnections.com/flights-from-dallas-fort-worth-dfw

[12] *See* Driving Directions from Dallas/Fort Worth International Airport to Northern District of Texas Courthouse in Dallas, *Google Maps*, https://tinyurl.com/966ufed4

[13] *See* Transit Directions from Dallas/Fort Worth International Airport to Northern District of Texas Courthouse in Dallas, *Google Maps*, https://tinyurl.com/nd4zrh5b

[14] *See* Hotels by the Northern District of Texas Courthouse in Dallas, *Google Maps*, https://tinyurl.com/6xa5yzey

would be well-suited to oversee this MDL, as Judge Ericksen has presided over a complex product-liability MDL. *In re Bair Hugger Forced Air Warming Devices Product Liab. Litig.*, MDL-2666 (D.M.N.). Judges Davis, Doty, and Nelson in the District of Minnesota present good alternative options for this MDL. All three judges have Related Actions pending in front of them. See *McDonald v. Syngenta*, 21-1065 (filed Apr. 26, 2021) (Davis, J.); *Rysavy v. Syngenta*, 21-01059 (filed Apr. 26, 2021) (Doty, J.); *Gamwell v. Syngenta*, 21-1063 (filed Apr. 26, 2021) (Nelson, J.). Moreover, all three judges have overseen MDLs, and Judges Doty and Nelson have no current MDLs on their dockets. Similarly, in the Northern District of Texas, Judge Means has overseen MDLs before, with none currently pending, and Judge Lynn has overseen two MDLs before, with only one pending.

## III. These Cases should not be Coordinated in either the Northern District of California or the Southern District of Illinois.

### a. The Northern District of California.

None of the 18 plaintiffs in the 15 Related Actions in the Northern District of California reside in the Northern District,[15] or have counsel that reside in California. The only apparent factual connection between these cases and the Northern District of California is CUSA's headquarters in San Ramon. But the

---

[15] Plaintiffs reside in Arizona, Arkansas, California, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Maryland, Minnesota, Mississippi, Missouri, New Jersey, New York, Oklahoma, Oregon, Pennsylvania, Tennessee, Texas, Virginia, West Virginia, and Wisconsin. Also, only three of 18 plaintiffs appear to allege exposure in California. *See Rakoczy v. Syngenta*, No. 3:21-cv-2083; *Walker v. Syngenta*, No. 3:21-cv-1947; *O'Connor v. Syngenta*, No. 3:21-cv-2495.

location of CUSA's headquarters is of marginal to no importance given that the company has not sold paraquat for over 35 years (since 1986). Moreover, "the physical location of documents and other evidence has become increasingly irrelevant as electronic discovery becomes more widespread and convenient." *Kriebel v. Life Ins. Co. of N.A.*, 2015 WL 11347968, at *5 (D.D.C. Oct. 14, 2015). And as noted above, CUSA has already collected its paraquat-related documents in connection with state-court litigation and those documents reside with CUSA's counsel in electronic format outside the Northern District of California. Thus, CUSA's presence in that District should be of little importance to the Panel's consideration of an appropriate MDL forum.

The Northern District of California may also find it difficult to manage this MDL. The Northern District of California has three judicial vacancies—all of which the Federal Judicial Center considers "judicial emergencies" that leave the court significantly understaffed.[16] In addition to these judicial emergencies, the Northern District of California is the busiest MDL forum in the federal system, with responsibility for *twenty* MDL actions that contain a total of 6,546 discrete lawsuits. These concerns also extend to the non-MDL docket. According to the Federal Judicial Center, the court has 511 civil cases per judge—the most among all courts

---

[16] *See* Federal Judicial Center, *Judicial Emergencies*,
https://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies.

with a pending paraquat case.[17]  Moreover, those cases' complexity are palpable:  in 2020, the Northern District of California's civil docket received 551 "weighted filings" per authorized judgeship—the ninth most burdensome docket in the country and busiest among MDL possibilities.  The Panel should not burden the Northern District of California with yet another MDL, which would be its sixth new consolidation in the last twelve months, especially when more-convenient districts have the capacity.

In short, consolidating these particular actions in the San Francisco Bay Area would fall short of "promot[ing] the just and efficient conduct of [the relevant] actions."  28 U.S.C. § 1407(a).

**b.  The Southern District of Illinois.**

The Southern District of Illinois is similarly not suited for this case.  The Southern District of Illinois has just four authorized judgeships and five judges with active cases,[18] which means assignment of an MDL will have a disproportionately large impact on its workload.  The Southern District of Illinois's experience with the *Depakote* mass action, *see* Burnette Resp. at 9; Resp. of Denes et al. at 7 (Apr. 15, 2021), ECF No. 16, counsels against centralizing the MDL there, as those

---

[17]  *See* United States Courts, *US District Courts -- Weighted and Unweighted Filings per Authorized Judgeship*, https://www.uscourts.gov/sites/default/files/data_tables/jb_x1a_0930.2020.pdf.

[18]  *See* U.S. District Court for S.D. Ill., *Judges*, https://www.ilsd.uscourts.gov/Judges.aspx (listing the district's four District Judges and one Senior District Judge).

proceedings placed a considerable burden on the court's limited resources.  *See In re Depakote*, 2017 WL 4518330, at *4 (S.D. Ill. Oct. 10, 2017) ("One need only look at this docket to see the monumental task that the Court undertakes in selecting even one case to proceed to trial out of the hundreds that have been filed."); *In re Depakote*, 2017 WL 2645687, at *1 (S.D. Ill. June 20, 2017) (observing that even if "the Court holds nothing but Depakote litigation trials 365 days a year," having a trial for every case "w[ould] take [Judge Rosenstengel] far past the end of her career to resolve all of the cases currently on the docket").  The Panel should not risk overwhelming that court's limited resources when the Eastern District of Missouri is a nearby alternative court with much more capacity and an earlier-filed case underway.[19]

## CONCLUSION

If the Panel elects to consolidate the Related Actions for pretrial purposes, CUSA supports centralization in the Eastern District of Missouri, or the District of Minnesota, or Northern District of Texas.

---

[19] The number of paraquat cases filed in the Northern District of California and Southern District of Illinois do not outweigh these above considerations.  No one district or court consistently had the largest number of cases over the past few weeks.  And new cases are being filed every day, frequently with multiple cases filed in one day.

Respectfully submitted,


By:   /s/ Jason Levin
Jason Levin, CA SBN #161807
**STEPTOE & JOHNSON LLP**
Los Angeles, California 900071
213-439-9400
213439-9599 (Facsimile)
jlevin@steptoe.com

**HUSCH BLACKWELL LLP**
Joseph C. Orlet, #06197026
Bryan Hopkins, #06311580
Megan A. Scheiderer, #06329211
190 Carondelet Plaza, Suite 600
St. Louis, Missouri  63105
314-480-1500
314-480-1505 (Facsimile)
joseph.orlet@huschblackwell.com
bryan.hopkins@huschblackwell.com
megan.scheiderer@huschblackwell.com

Michael Klebanov, #6317636
750 17th St. N.W., Suite 900
Washington, DC  20006-4675
202-378-2300
202-378-2319 (Facsimile)
michael.klebanov@huschblackwell.com

**KING & SPALDING LLP**
W. Ray Persons
Andrew T. Bayman
1180 Peachtree Street, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
rpersons@kslaw.com
abayman@kslaw.com

Shannon M. Kasley
1700 Pennsylvania Avenue, NW
Second Floor
Washington, DC  20006
Telephone:  (202) 737-0500
skasley@kslaw.com


**ATTORNEYS FOR DEFENDANT
CHEVRON U.S.A. INC.**