BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE PARAQUAT PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL Docket No. 3004 |

**SYNGENTA'S RESPONSE TO THE MOTION TO TRANSFER
RELATED ACTIONS FOR COORDINATED PRETRIAL PROCEEDINGS**

Syngenta Crop Protection, LLC, Syngenta Seeds, LLC, and Syngenta Corporation (together, "Syngenta") do not oppose centralizing pretrial proceedings in a suitable forum for the pending federal actions related to paraquat and Parkinson's Disease that have been filed against Syngenta and other defendants (the "Related Actions"). To the extent the Panel is inclined to centralize these actions, Syngenta submits that centralization should be before the U.S. District Court for the Eastern District of Missouri.[1] Syngenta further submits that neither the Northern District of California nor the Southern District of Illinois is a suitable or appropriate forum for centralization of this case.

To be clear, Syngenta vigorously disputes the allegations of the complaints at issue here. The Environmental Protection Agency and leading public epidemiologists have specifically considered and exhaustively analyzed the allegations that paraquat causes Parkinson's Disease, and they have found that the evidence does not show a causal link. Moreover, paraquat has been a Restricted Use Pesticide for more than forty years, which means that paraquat is not an over-the-counter product, but rather a pesticide that can be used only by those individuals who satisfy certain training and licensing requirements. However, given that at the time of filing there are sixty-two

---

[1] For the reasons stated in the response filed by Chevron U.S.A., Inc., ECF No. 68, Syngenta also agrees the District of Minnesota and Northern District of Texas would each be a suitable forum.

cases pending in twelve districts, Syngenta does not oppose centralization. *See In re Farxiga (Dapagliflozin) Prods. Liab. Litig.*, 273 F. Supp. 3d 1380, 1381-82 (J.P.M.L. 2017).

## BACKGROUND

Paraquat is a Restricted Use Pesticide that has been approved in the United States for nearly sixty years. Since 1978, paraquat has been available only to licensed applicators who have undergone training and certification in safe handling of Restricted Use Pesticides. Like all pesticides, the Environmental Protection Agency heavily regulates paraquat products under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136 *et seq.*, which requires the EPA to approve and register all pesticides and their accompanying labeling. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 991-92 (1984). In particular, the EPA will register a pesticide only if the evidence shows that it is safe and that its accompanying labels and materials, when followed, are adequate to protect human health. *See* 7 U.S.C. § 136a(c)(5).

The EPA has specifically reviewed and rejected the central allegation in these lawsuits: that paraquat causes Parkinson's Disease. After an eight-year evaluation, which included a systematic review that screened thousands of studies and included public input, the EPA "conclu[ded] that the weight of evidence was insufficient to link paraquat exposure from pesticidal use of US registered products to [Parkinson's] in humans." Ex. A, EPA, *Paraquat: Response to Comments on the Draft Human Health Risk Assessment* 2 (Sep. 24, 2020).

The EPA's conclusion is supported by a wide variety of literature, including the Agricultural Health Study—a collaborative effort involving investigators from the National Cancer Institute, the National Institute of Environmental Health Sciences, the EPA, and the National Institute for Occupational Safety and Health. The Agricultural Health Study conducted an epidemiological analysis of the alleged link between pesticide use and Parkinson's Disease incidence. After evaluating use of pesticides and Parkinson's incidence in 38,274 pesticide

applicators and 27,836 of their spouses for over 20 years, the Agricultural Health Study reported "null associations among those [study participants exposed to paraquat who] did not report a history of head injury." *See* Ex. B, Srishti Shrestha et al., *Pesticide use and incident Parkinson's disease in a cohort of farmers and their spouses*, 191 Envtl. Research 191 (Sep. 2020).

Yet plaintiffs in the Related Actions nonetheless take the position that the EPA and the Agricultural Health Study are wrong, and allege that their prior use of paraquat products caused them to develop Parkinson's. To date, plaintiffs have filed sixty-two cases in twelve different judicial districts. The first federal complaint was filed July 22, 2020, in the Eastern District of Missouri. *See Holyfield v. Chevron U.S.A.*, No. 3:21-cv-00293 (E.D. Mo. Jul. 22, 20). Beginning in late February 2021—nearly seven months after *Holyfield* was filed—various plaintiffs began filing similar suits in other federal courts, leading to this proceeding.

The defendants in the Related Actions include Syngenta Crop Protection, LLC, an agricultural company principally located in Greensboro, NC; Syngenta Seeds, LLC, which is principally located in Minnesota; Syngenta Corporation, which is principally located in Delaware; those entities' foreign parent Syngenta AG, located in Basel, Switzerland; and Chevron U.S.A., a chemical company headquartered in San Ramon, CA. The Related Actions include sixty-seven plaintiffs from twenty-six states.

On April 7, 2021, Paul Rakoczy, a New Jersey resident who filed suit in the Northern District of California, filed a motion with this Panel to transfer the Related Actions for coordinated pretrial proceedings, requesting centralization before Judge Edward Chen in the Northern District of California.[2] Since then, other plaintiffs' responses have sought consolidation elsewhere. These

---

[2] Mr. Rakoczy is plaintiff in the Northern District of California's earliest-filed *active* case, but he is not the first plaintiff who filed there. John and Nicole Walker, represented by Mr. Rakoczy's same counsel, filed a case on March 19, 2021, that was assigned to Judge Haywood Gilliam; but

include requests for consolidation in the Eastern District of Missouri before Judge John Ross, Judge Stephen Limbaugh, or Judge Catherine Perry, *see, e.g.*, Holyfield Resp. at 1, ECF No. 57; Adams Resp. at 3-5, ECF No. 22, in the Southern District of Illinois before Chief Judge Nancy Rosenstengel, *see, e.g.*, Burnette Resp. at 1, 10-11, ECF No. 7, and in the District of Minnesota, *see* Elmore et al. Resp. at 5-6, ECF No. 62, and Northern District of Mississippi, *see* Nunnery Resp. at 3, ECF No. 56.[3]

## ARGUMENT

**I.     SYNGENTA DOES NOT OPPOSE CONSOLIDATION IN A SUITABLE FORUM.**

Syngenta opposes an MDL in the Northern District of California, but does not otherwise oppose consolidation for pretrial purposes in a forum that makes sense for this case. Syngenta further reserves the right to request transfer to an appropriate court for trial pursuant to *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).

Syngenta opposes consolidation in the Northern District of California because the considerable inconvenience of consolidating these particular actions in the San Francisco Bay Area would fall short of "promot[ing] the just and efficient conduct of [the relevant] actions." *See* 28 U.S.C. § 1407(a). Foremost, only *one* of the sixty-seven plaintiffs in the sixty-two Related Actions resides in the State of California, much less the Northern District,[4] and that plaintiff filed in the

---

they filed a "Notice of Voluntary Dismissal Without Prejudice" on April 6, 2021. *See* Notice of Dismissal, *Walker v. Syngenta AG*, No. 3:21-cv-1947 (N.D. Cal. Apr. 6, 2021), ECF No. 10.

[3] Some of the advocates for these jurisdictions appear to be voting more than once. For example, the motion by Mr. Rakoczy—who resides in New Jersey but seeks consolidation in San Francisco—was filed by "counsel of record for Movant Paul Rakoczy and Plaintiffs Michael and Jean Kearns, Todd Tenneson, and Kenneth Turner." *See* Mot. at 2, ECF No. 1. But Michael and Jean Kearns later lodged a filing of their own supporting the Southern District of Illinois or the Northern District of California, albeit under representation of different named counsel. *See* Kearns Resp. at 10, ECF No. 24.

[4] Plaintiffs reside in Arizona, Arkansas, California, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maryland, Minnesota, Mississippi, Missouri, New Jersey,

District of Minnesota.[5]  Plaintiffs in the Related Actions are represented by dozens of different law firms, and none of them operates in California either.  The named Syngenta entities—Syngenta Crop Protection, Syngenta Seeds, Syngenta Corporation, and Syngenta AG—are each located in North Carolina, Minnesota, Delaware, and Switzerland, respectively.

The only party located in California is Chevron, but that is unlikely to provide much convenience here—because Chevron has not sold paraquat for 35 years and, for what relevant evidence may be there, "the physical location of documents and other evidence has become increasingly irrelevant as electronic discovery becomes more widespread and convenient." *Kriebel v. Life Ins. Co. of N.A.*, No. 1:15-cv-00151, 2015 WL 11347968, at *5 (D.D.C. Oct. 14, 2015).  This is especially true in light of the expansion of remote depositions and discovery—in particular amid the COVID-19 pandemic—for which coordinating remote events based on time zone is as important a factor for convenience as coordinating in-person events based on physical proximity.  Indeed, Chevron itself does not support consolidation in California.  *See* Chevron Resp. at 1, ECF No. 68.  Accordingly, Chevron being principally located in California does not provide any meaningful degree of "easy access to documents and witnesses."  Mem. at 7, ECF No. 2-1.  Any related convenience will be offset by the considerable inconvenience arising from the plaintiffs' locations elsewhere and Syngenta's locations in North Carolina, Minnesota, Delaware, and Switzerland.

As noted, the relevant time zones are more important, and the locations of nearly all the parties and their counsel outside the Pacific Time Zone makes the Northern District of California prohibitively inconvenient.  That is, across the sixty-two Related Actions, all but four parties

---

New York, Oklahoma, Oregon, Pennsylvania, Tennessee, Texas, Virginia, West Virginia, and Wisconsin.

[5]  *See Wilson v. Syngenta Crop Protection, LLC*, No. 21-cv-01113 (D. Minn. Apr. 28, 2021).

(Chevron and three plaintiffs) would be litigating under at least a two-hour time difference. That gap is even more stark for Syngenta witnesses based in the United Kingdom and Switzerland, which have an eight- or nine-hour time difference that would create considerable scheduling difficulties. For example, any depositions of Europe-based witnesses would have to proceed without working access to the court—which does not even open until 5:00 PM in Switzerland.

In addition, initiating new pretrial proceedings in the Northern District of California would risk upsetting the existing pretrial proceedings in the earliest-filed federal action that have been moving forward for nearly ten months before Judge Ross in the Eastern District of Missouri. *See Holyfield v. Chevron U.S.A.*, No. 3:21-cv-00293 (E.D. Mo. Jul. 22, 2020); *see also* Part II.B *infra*. Put together, the prospect of consolidating these cases before the Northern District of California would not "prevent inconsistent pretrial rulings" on motions to dismiss, nor would it "conserve the resources of the parties, their counsel, and the judiciary." *See In re Farxiga (Dapagliflozin) Prods. Liab. Litig.*, 273 F. Supp. 3d at 1382. For these reasons, Syngenta opposes consolidating these actions in the Northern District of California (or in another similarly inconvenient forum), but does not oppose consolidation otherwise.

## II. THE EASTERN DISTRICT OF MISSOURI IS THE MOST APPROPRIATE FORUM.

If the Panel opts for consolidation, the Eastern District of Missouri is the most appropriate forum here. ***First***, consolidating the Related Actions in the Eastern District of Missouri is the most efficient use of judicial resources because four of the actions—including the first-filed and most-advanced case in this litigation—are currently pending there. ***Second***, the Eastern District of Missouri's geographically central location (and time zone) make it convenient and accessible by all parties. ***Third***, the Eastern District of Missouri has the appropriate balance of capacity, resources, and experience to ably manage this litigation.

6

### A. The Eastern District Of Missouri Is The Most Efficient Forum.

As the site of the first-filed and most advanced case, the Eastern District of Missouri is the most efficient location for resolving this dispute. *See In re Edward H. Okun I.R.S. § 1031 Tax Deferred Exch. Litig.*, 609 F. Supp. 2d 1380, 1381-82 (J.P.M.L. 2009) (transferring litigation to "the first-filed and most procedurally advanced action"). Indeed, the most advanced case pending before the Eastern District of Missouri—*Holyfield v. Chevron U.S.A.*, No. 3:21-cv-00293 (E.D. Mo. Jul. 22, 20)—was filed nearly **seven months** before the next-filed case in this litigation, *Hemker v. Syngenta Crop Protection, LLC*, No. 3:21-cv-00211 (S.D. Ill. Feb. 23, 2021). The Eastern District of Missouri has considered and ruled on a fully briefed motion to dismiss, whereas the majority of the other actions were filed after the *Holyfield* motion to dismiss was resolved. *See In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, 763 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011) (ordering centralization to the District of Massachusetts rather than the District of New Jersey because "[t]he first-filed action, in which a fully briefed motion to dismiss [was] currently pending, was filed in the District of Massachusetts … months before the New Jersey action was filed"). This weighs in favor of centralization in the Eastern District of Missouri.

### B. The Eastern District Of Missouri Is Convenient And Accessible To Plaintiffs And Defendants.

Moreover, as this Panel has repeatedly observed, the Eastern District of Missouri is "a geographically central and accessible forum" appropriate for "nationwide litigation." *See, e.g.*, *In re Ashley Madison Customer Data Sec. Breach Litig.*, 148 F. Supp. 3d 1378, 1380 (J.P.M.L. 2015) (transferring five actions and thirteen related actions pending in eleven districts to the Eastern District of Missouri); *In re NuvaRing Prods. Liab. Litig.*, 572 F. Supp. 2d 1382, 1383 (J.P.M.L. 2008) (centralizing cases in the Eastern District of Missouri as a "readily accessible district"); *In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Pracs. Litig.*, 536 F. Supp. 2d 1369, 1370-71

7

(J.P.M.L. 2008) (centralizing cases in the Eastern District of Missouri "[g]iven the geographic dispersal of the constituent actions and the potential tag-along actions").

In contrast to the difficulties of a consolidation in California explained above, *see* Part I *supra*, the Eastern District of Missouri's central geographic location in St. Louis minimizes disparities in time and distance.[6] Consolidating the cases in the Central Time Zone would obviate time-change-related difficulties for domestically located parties and help alleviate difficulties for those in Europe by ensuring at least some access to the court during the business day. St. Louis is also highly accessible, given that Lambert International Airport is a major airport servicing sixty-eight nonstop flights across the country.[7] The Eastern District of Missouri courthouse sits just fourteen miles from the airport—and travelers are much less likely to encounter traffic or other delays there than in San Francisco.[8] Likewise, St. Louis's light rail system travels directly from the airport to the Eastern District of Missouri's courthouse,[9] and numerous hotels surrounding the courthouse are available for reasonable prices well under $200 a night.[10]

---

[6] The points made by plaintiffs seeking centralization before Judge Rosenstengel in the Southern District of Illinois, *see, e.g.*, Albanese & O'Connor Resp. at 7, ECF No. 11, apply equally to the Eastern District of Missouri, as the courts are located within several miles of each other, *see* Driving Directions from Eagleton U.S. Courthouse to U.S. Dist. Court House for S.D. Ill., *Google Maps*, https://bit.ly/2QI5HGS. As discussed below, however, the Southern District of Illinois is not as well-equipped to take on a consolidated MDL and the actions filed there lag significantly behind proceedings in the Eastern District of Missouri. *See* Part C *infra*.

[7] *See* St. Louis Lambert Int'l Airport, *Non Stop Service*, https://www.flystl.com/flights-and-airlines/non-stop-service.

[8] *See* Driving Directions from St. Louis Int'l Airport to Thomas F. Eagleton U.S. Courthouse, *Google Maps*, https://bit.ly/3auCg2d.

[9] *See* Transit Directions from St. Louis Int'l Airport to Thomas F. Eagleton U.S. Courthouse, *Google Maps*, https://bit.ly/3tCdJQn.

[10] *See* Hotels near Thomas F. Eagleton U.S. Courthouse, *Google Maps*, https://bit.ly/2RQV9pA.

### C. The Eastern District Of Missouri Is Well-Equipped To Manage This MDL.

The Eastern District of Missouri is also best equipped to manage this litigation, particularly in comparison to the Northern District of California and Southern District of Illinois. The Eastern District of Missouri has the capacity and judicial experience to efficiently manage pretrial proceedings in these actions without straining its judicial resources, and it is a far superior option than the other alternatives proposed thus far.

By any measure, the Northern District of California is poorly positioned to take on another MDL. It is already the busiest MDL forum in the federal system, overseeing *twenty* MDL actions that contain a total of 6,546 discrete lawsuits.[11] That high workload comes in the context of the court's three judicial vacancies—all of which the Federal Judicial Center considers "judicial emergencies" that leave the court significantly understaffed.[12] (There are no judicial vacancies, much less *emergencies*, in the Eastern District of Missouri.)

Those concerns are equally true for the Northern District of California's non-MDL docket. According to the most recent data from the Federal Judicial Center, the court has 511 civil cases per judge—the most among all courts with a pending paraquat case.[13] That workload is even more striking considering those cases' complexity. In 2020, the Northern District of California's civil docket received 551 "weighted filings" per authorized judgeship—the ninth most burdensome docket in the country and busiest among MDL possibilities. *See id.* The Panel should not burden

---

[11] *See* Jud. Panel on Multidistrict Litig., *MDL Statistics Report - Distribution of Pending MDL Dockets by District*, https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-April-15-2021.pdf.

[12] *See* Fed. Jud. Ctr., *Judicial Emergencies*, https://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies.

[13] *See* U.S. Courts, *US District Courts—Weighted and Unweighted Filings per Authorized Judgeship*, https://www.uscourts.gov/statistics/table/x-1a/judicial-business/2020/09/30.

the Northern District of California with yet another MDL—which would be its sixth new consolidation in the last twelve months—when a more-convenient district has capacity.

Different but equally important concerns make the Southern District of Illinois a poor fit for this case.  The Southern District of Illinois has just four authorized judgeships and five judges with active cases,[14] which means assignment of an MDL will have the greatest relative impact on its workload.  That is likely one reason why it has overseen so few MDLs: since the 1968 passage of the Multidistrict Litigation Act, the Panel has only consolidated five MDLs there.[15]  Although some plaintiffs cite the court's experience with the *Depakote* mass action, *see* Burnette Resp. at 9, ECF No. 7; Denes et al. Resp. at 7, ECF No. 16, those proceedings placed a considerable burden on the court's limited docket.  *See In re Depakote*, No. 12-cv-52-NJR, 2017 WL 4518330, at *4 (S.D. Ill. Oct. 10, 2017) ("One need only look at this docket to see the monumental task that the Court undertakes in selecting even one case to proceed to trial out of the hundreds that have been filed."); *In re Depakote*, No. 12-cv-52-NJR, 2017 WL 2645687, at *1 n.2 (S.D. Ill. June 20, 2017) (observing that even if "the Court holds nothing but Depakote litigation trials 365 days a year," having a trial for every case "w[ould] take [Judge Rosenstengel] far past the end of her career to resolve all of the cases currently on the docket").

The state proceedings in *Hoffman v. Syngenta Crop Protection, LLC*, No. 17-L-517 (20th Jud. Cir. St. Clair. Cnty., Ill.), are not a reason to centralize federal proceedings in the Southern District of Illinois.  That the district also includes St. Clair County, Ill. has little bearing on its ability to coordinate discovery with state proceedings there or elsewhere.  The Federal Rules of

---

[14]  *See* U.S. District Court for S.D. Ill., *Judges*, https://www.ilsd.uscourts.gov/Judges.aspx (listing four District Judges and one Senior District Judge).

[15]  *See* Jud. Panel on Multidistrict Litig., *Multidistrict Litig. Terminated Through Sep. 30, 2020*, https://www.jpml.uscourts.gov/sites/jpml/files/Cumulative%20Terminated%202020_0.pdf.

Civil Procedure would govern discovery in a consolidated action no matter its location, and federal courts routinely coordinate with state courts outside their particular judicial district. Indeed, the very example of federal–state discovery coordination in the *Manual for Complex Litigation*—*In re Diet Drugs Products Liability Litigation*, MDL No. 1203—involved state discovery in California and elsewhere coordinated through the Eastern District of Pennsylvania.[16] In light of how other mass actions have burdened the Southern District of Illinois, it would make little sense to risk overwhelming the court's limited docket again when there is a nearby alternative court with much more capacity and an earlier-filed case underway.

That alternative is the Eastern District of Missouri, which is best equipped to supervise these actions based on its capacity and the experience of its judges—some of whom have presided over other agricultural-related MDLs in the past. To begin, Judge Ross is currently presiding over the first-filed action potentially subject to consolidation. *See Holyfield v. Chevron U.S.A.*, No. 3:21-cv-00293 (E.D. Mo. Jul. 22, 20). Moreover, the Eastern District of Missouri has twelve active judges (compared to five in the Southern District of Illinois), which provides the district enough capacity to handle an MDL like this. It also lacks the Northern District of California's judicial emergencies and overwhelming caseload—specifically, the Eastern District of Missouri counts just 260 "weighted" civil filings per authorized judgeship, which is less than half the 551 in the Northern District of California.[17] This balance of judicial resources and capacity cuts strongly in favor of centralizing the Related Actions in the Eastern District of Missouri—the district with "the

---

[16] *See In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 1999 WL 124414, at *1 (E.D. Pa. Feb. 10, 1999) ("the court has conferred with the Honorable Daniel S. Pratt, Judge of the Superior Court of the State of California in the county of Los Angeles, California"), *cited with approval in Manual for Complex Litigation (Fourth)* § 33.2 nn. 710, 714-15 (2004).

[17] *See* U.S. Courts, *US District Courts—Weighted and Unweighted Filings per Authorized Judgeship*, https://www.uscourts.gov/statistics/table/x-1a/judicial-business/2020/09/30.

necessary resources to be able to devote the time and effort to pretrial matters that this docket is likely to require." *In re Wireless Tel. 911 Calls Litig.*, 259 F. Supp. 2d 1372, 1374 (J.P.M.L. 2003).

Finally, the Eastern District of Missouri—and Judges Ross and Limbaugh specifically—is well-equipped to manage the Related Actions and has significant experience with complex MDLs. *See, e.g.*, *In re Ashley Madison Customer Data Sec. Breach Litig.*, MDL No. 2669; *In re Dicamba Herbicides Litig.*, MDL No. 2820 (Limbaugh, J.). The Eastern District of Missouri's suitability has led the Panel to transfer twenty-two prior MDLs there, three of which the court currently oversees. In particular, the Eastern District of Missouri has overseen several MDLs that, like this one, involve the agricultural sector and pesticide products in particular. *See, e.g.*, *In re Dicamba Herbicides Litig.*, MDL No. 2820; *In re Hops Antitrust Litig.*, MDL No. 706; *In re Genetically Modified Rice Litig.*, MDL No. 1811; *In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Pracs. Litig.*, MDL No. 1907. The opportunity to draw on that experience, without overburdening the judiciary, is another factor favoring centralization in the Eastern District of Missouri.

## CONCLUSION

If the Panel elects to centralize, Syngenta supports centralization in the Eastern District of Missouri.

| | |
|---|---|
| April 29, 2021 | Respectfully submitted,<br><br>/s/ *Ragan Naresh*<br>Ragan Naresh, P.C.<br>KIRKLAND & ELLIS LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004<br>Telephone: +1 202 389 5000<br>Facsimile: +1 202 389 5200<br>ragan.naresh@kirkland.com<br><br>*Counsel for Syngenta Crop Protection LLC and Syngenta Corporation* |