**BEFORE THE UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| **IN RE: PARAQUAT** | § | **MDL NO. 3004** |
| **PRODUCTS LIABILITY** | § | |
| **LITIGATION** | § | |

**REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR TRANSFER
OF ACTIONS TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28
U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL
PROCEEDINGS**

## **<u>TABLE OF CONTENTS</u>**

I.    Virtually Every Respondent Agrees that Paraquat Product Liability Litigation Is Appropriate for Transfer Pursuant to 28 U.S.C. Section 1407. ................................................................ 1

II.   The Sixteen Out of Seventeen Respondents Who Agree that Section 1407 Centralization Is Warranted Are Correct. ..................................................................................................... 2

III.  The Honorable Edward  Chen, United States District Court Judge, Northern District of California, Is the Most Appropriate Transferee Court and Has the Support of Most Plaintiffs. ................................................................................................................................ 4

IV.   Certain of the Proposed Alternatives Would Not Serve the Interests of Judicial Efficiency or the Convenience of the Parties and Witnesses ........................................................................ 11

    A. The District of Minnesota Would Not Serve the Convenience of Parties and Witnesses Nor Promote the Just and Efficient Conduct of Such Actions. .................................................. 11

    B. The Northern District of California Has a Closer Nexis with Paraquat Litigation than the Eastern District of Missouri. ............................................................................................... 14

    C. The Northern District of Alabama Would Not Serve the Convenience of Parties and Witnesses Nor Promote the Just and Efficient Conduct of Such Actions. ....................... 16

    D. The Northern District of Mississippi Would Not Serve the Convenience of Parties and Witnesses Nor Promote the Just and Efficient Conduct of Such Actions. ....................... 18

    E. The Northern District of Texas Has No Connection to Any Party, and No Case Is Filed There; this District Would Not Serve the Convenience of Parties and Witnesses Nor Promote the Just and Efficient Conduct of Such Actions. .................................................. 18

    F. The Eastern District of Pennsylvania Would Not Serve the Convenience of Parties and Witnesses Nor Promote the Just and Efficient Conduct of Such Actions. ....................... 19

V.    CONCLUSION ............................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re: Air Crash at San Francisco, Cal.*,
987 F. Supp. 2d 1378 (J.P.M.L. 2013)........................................................................5

*In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*,
No. MDL 2972, __ F. Supp. 3d __, 2020 WL 7382276 (J.P.M.L. Dec. 15,
2020) ..........................................................................................................................8

*Blackman v. Park W. Galleries, Inc.*,
No. C08-1310RSL, 2009 WL 1174639 (W.D. Wash. Apr. 29, 2009) ....................15

*In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*,
424 F. Supp. 504 (J.P.M.L. 1976).............................................................................8

*In re: Carrier IQ, Inc., Consumer Priv. Litig.*,
856 F. Supp. 2d 1332 (J.P.M.L. 2012)......................................................................6

*In re CertainTeed Corp. Roofing Shingle Prod. Liab. Litig.*,
474 F. Supp. 2d 1357 (J.P.M.L. 2007)......................................................................8

*In re Charter Commc'ns, Inc., Sec. Litig.*,
254 F. Supp. 2d 1379 (J.P.M.L. 2003)......................................................................9

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prod. Liab. Litig.*,
273 F. Supp. 3d 1377 (J.P.M.L. 2017)......................................................................6

*In re: Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liab.
Litig.*, MDL No. 2777 ...............................................................................................6

*In re Commonwealth Oil/Tesoro Petroleum Sec. Litig.*,
458 F. Supp. 225 (J.P.M.L. 1978).............................................................................8

*In re: Cymbalta (Duloxetine) Prod. Liab. Litig.*,
65 F. Supp. 3d 1393 (J.P.M.L. 2014) .......................................................................4

*In re Dicamba Herbicides Litig.*,
289 F. Supp. 3d 1345 (J.P.M.L. 2018) ....................................................................16

*In re Elec. Data Sys. Corp. Sec. & 'ERISA' Litig.*,
254 F. Supp. 2d 1375 (J.P.M.L. 2003)......................................................................8

*In re Enhanced Recovery Co., LLC, Fair Debt Collection Practices Act (FDCPA)*
  *Litig.*,
  363 F. Supp. 3d 1375 (J.P.M.L. 2019)..................................................................2, 3

*In re Falstaff Brewing Corp. Antitrust Litig.*,
  434 F. Supp. 1225 (J.P.M.L. 1977).........................................................................8

*In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Practices*
  *Litig.*,
  412 F. Supp. 3d 1355 (J.P.M.L. 2019).....................................................................8

*In re Foundry Resins Antitrust Litig.*,
  342 F. Supp. 2d 1346 (J.P.M.L. 2004).....................................................................8

*In re Gen. Motors Corp. Sec. & Derivative Litig.*,
  429 F. Supp. 2d 1368 (J.P.M.L. 2006).....................................................................9

*In re Gen. Motors LLC Chevrolet Bolt EV Battery Prod. Liab. Litig.*,
  No. MDL 2987, 2021 WL 1220771 (J.P.M.L. Apr. 1, 2021)...............................3, 4

*In re: Glaceau VitaminWater Mktg. & Sales Practices Litig.*,
  764 F. Supp. 2d 1349 (J.P.M.L. 2011)....................................................................15

*In re Hyundai & Kia Fuel Econ. Litig.*,
  923 F. Supp. 2d 1364 (J.P.M.L. 2013)....................................................................16

*In re Int'l House of Pancakes Franchise Litig.*,
  331 F. Supp. 556 (J.P.M.L. 1971) ..........................................................................15

*In re: Lumber Liquidators Chinese-Manufactured Flooring Products Mktg., Sales*
  *Practices & Products Liab. Litig.*,
  109 F. Supp. 3d 1382 (J.P.M.L. 2015)......................................................................5

*In re: Park W. Galleries, Inc., Mktg. & Sales Practices Litig.*,
  645 F. Supp. 2d 1358 (J.P.M.L. 2009)....................................................................15

*In re Prudential Ins. Co. of Am. SGLI/VGLI Cont. Litig.*,
  763 F. Supp. 2d 1374 (J.P.M.L. 2011) ...................................................................16

*In re: Roundup Prod. Liab. Litig.*,
  214 F. Supp. 3d 1346 (J.P.M.L. 2016)....................................................................15

*In re Standard Auto. Corp. Retiree Benefits "ERISA" Litig.*,
  431 F. Supp. 2d 1357 (J.P.M.L. 2006)....................................................................16

*In re U. S. Fin. Sec. Litig.*,
  375 F. Supp. 1403 (J.P.M.L. 1974).........................................................................8

*In re Upjohn Co. Antibiotic 'Cleocin' Prod. Liab. Litig.*,
450 F. Supp. 1168 (J.P.M.L. 1978) ..................................................................8

*In re Welding Rod Prod. Liab. Litig.*,
269 F. Supp. 2d 1365 (J.P.M.L. 2003) ............................................................8

*In re: Wells Fargo Home Mortgage Overtime Pay Litig.*,
MDL No. 1770 ..................................................................................................6

*In re: Wells Fargo Loan Processor Overtime Pay Litig.*,
MDL No. 1841 ..................................................................................................6

**Statutes**

28 U.S.C. § 1332(a) ...........................................................................................10

28 U.S.C. Section 1407 .................................................................................. *passim*

**Articles**

James Walsh, <u>Christmas Blizzard Pummels Minnesota, Closing Roads, Stranding
Drivers,</u> Star Tribune (Dec. 24, 2020) .........................................................14

Janet Moore and Tim Harlow, <u>Snowstorm Hits Minnesota, Setting Up Holiday
Travel Mess</u>, Star Tribune (Nov. 27, 2019) ..................................................14

Paul Walsh, <u>Heavy Snowfall Pushes Twin Cities to February Record, With More
in Forecast</u>, Star Tribune (Feb. 21, 2019) ....................................................14

I.     **Virtually Every Respondent Agrees that Paraquat Product Liability Litigation Is Appropriate for Transfer Pursuant to 28 U.S.C. Section 1407**.

The instant mass tort is a quintessential candidate for Section 1407 transfer. It involves a single category of herbicide, paraquat, a single disease, Parkinson's, and two corporate entity groups, Chevron, U.S.A. and Syngenta companies (i.e., Syngenta Corp., Syngenta Crop Protection, LLC, and Syngenta Seeds, LLC).[1] The Defendants agree with moving Plaintiffs on the propriety of creating an *In re Paraquat Products Liab. Litig.* MDL. Defendant Chevron, U.S.A. ("Chevron") "agrees that consolidation for pretrial proceedings is warranted and would promote justice and efficiency in judicial administration." Defendant Chevron Resp. [Doc. 68], p. 3. Likewise, Defendants Syngenta Crop Protection, LLC, Syngenta Seeds, LLC, and Syngenta Corporation ("Syngenta") "do not oppose centralizing pretrial proceedings[.]" Syngenta Resp. [Doc. 70], p. 1. All responding plaintiffs, save one, also agree that transfers for pre-trial coordination purposes are warranted.[2]

---

[1] *See* Plaintiff's Motion for Transfer of Actions to the N.D. Cal. Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings and Brief in Support.

[2]  *See* Response to Motion to Transfer by Plaintiff Jerry Burnette in Support of Transferring the Actions to the Southern District of Illinois Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings [Doc. 7] ("Burnette Resp."); Response by Plaintiffs Albanese and O'Connor in Support of Plaintiff's Motion for Transfer of Actions to the Northern District of California Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings [Doc. 11] ("Albanese Resp."); Response in Support of Plaintiff's Motion for Transfer of Actions to the Northern District of California Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings [Doc. 16] ("Denes Resp."); Plaintiff Robin Adam's Interested Party Response to Plaintiffs Paul Rakoczy's Motion for Transfer Under 28 U.S.C. § 1407 [Doc. 22]; Interested Party Response by Plaintiffs Michael and Jean Kearns to Motion to Transfer Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Proceedings [Doc. 24] ("Kearns Resp."); Response to Motion to Transfer by Plaintiff Albertus Barber in Support of Transferring the Actions to the Southern District of Illinois Pursuant To 28 U.S.C. §1407 for Coordinated or Consolidated Pretrial Proceedings [Doc. 42] ("Barber Resp."); Plaintiff John R. Nunnery, Jr.'s Interested Party Response to Plaintiff Paul Rakoczy's Motion for Transfer Under 28 U.S.C. §1407 [Doc. 56] ("Nunnery Resp."); Plaintiff Roy Ward's Response in Support of Plaintiff's Motion for Transfer of Actions to the Northern District of California Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings [Doc. 60]

Since the filing of this transfer motion, fifty-six cases have been identified as related actions. As of this writing, the total number of cases is seventy in fifteen different judicial districts, with sixteen cases pending in the Northern District of California. *See* Civil Docket for MDL No. 3004, CM/ECF for JPML.[3] This volume of cases, pending in courts from coast to coast, amply demonstrates that consolidation in one forum for coordinated pre-trial proceedings would serve the interests of judicial efficiency and the convenience of parties and witnesses.[4]

## II.    The Sixteen Out of Seventeen Respondents Who Agree that Section 1407 Centralization Is Warranted Are Correct.

Out of seventeen responses, only one contends that this case is not appropriate for coordination and consolidation pursuant to Section 1407. The authorities this one opposition marshals for its extreme minority position are distinguishable. At the onset, this lone dissenting voice gets the standard wrong by ignoring the volume of cases on file. Other Respondents recognized that the case count was at least fifty-five,[5] and it has grown in the week since. The Holyfield objectors, however, rely on *In re Enhanced Recovery Co., LLC, Fair Debt Collection*

---

("Ward Resp."); Response to Movant Paul Rakoczy's Motion for Transfer Under 28 U.S.C. § 1407 [Doc. 62] ("Gustafson Resp."); Interested Party Response of Plaintiffs Virginia Altman, Dorvil Branscum, Sheila Branscum, Edward Bankston, Franklin Douglas, Patrick Halloran, Ellis Pratt, and Mary Stanton in Response to Plaintiff's Motion to Transfer [Doc. 63] ("Altman Resp."); Interested Party Response in Support of Coordinated or Consolidated Pretrial Proceedings Before the Southern District of Illinois [Doc. 66] ("Korein Tillery Resp."); Interested Party Response of Plaintiff Jonathan Rutherford to Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings [Doc. 75] ("Rutherford Resp."); Interested Party Response by Plaintiff Allen Tippey to Motion to Transfer Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Proceedings [Doc. 78] ("Tippey Resp."); Joint Response in Support of Plaintiff's Motion for Transfer of Actions to the Northern District of California Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings [Doc. 97] ("DiCello Resp.").

[3] One case (IAS/4:21-cv-00137) is listed as pending on the docket sheet.

[4] *See* Brief in Support of Plaintiff's Mot. for Transfer of Actions to the Northern District of California Pursuant to 28 U.S.C. § 1407, p. 10 n.11.

[5] *E.g.,* Chevron's Resp. [Doc. 68], p. 2 (55 cases in 12 different judicial districts as of 4/29/21).

*Practices Act (FDCPA) Litig.*, 363 F. Supp. 3d 1375 (J.P.M.L. 2019),[6] for the proposition that movants allegedly bear a heavier burden because "the number of pending cases is relatively small." Holyfield Resp., p. 3 [Page 7 of 15]. In *Enhanced Recovery*, only seven actions were at issue, at least four of which involved common plaintiffs' counsel. *See* 363 F. Supp. 3d at 1377. Here, in stark contrast, there are seventy cases—and counting.

The Holyfield Response makes a similar mistake in its citation to *In re Gen. Motors LLC Chevrolet Bolt EV Battery Prod. Liab. Litig.*, No. MDL 2987, 2021 WL 1220771 (J.P.M.L. Apr. 1, 2021) (case cited in Holyfield Resp., p. 3 [Doc. 57, Page 7 of 15]). In *GM Chevrolet Bolt EV Battery*, there were only eight filed actions. Moreover, the Panel's statement regarding consideration of alternatives to Section 1407 was relevant to a materially different litigation posture. Specifically, the Panel's reference to "other options" was meaningful in that case, because pending and anticipated Section 1404 motions could potentially have eliminated the multidistrict character. *GM Chevrolet Bolt EV Battery*,  at *1. Here, however, no such motions are filed, and Section 1407 is required to bring seventy (and counting) cases spread over fifteen Districts into the fold of one federal Judge.

This lone opposition brief misconstrues the significance of state court proceedings in Illinois, suggesting that discovery allegedly "has already been produced." Holyfield Resp., p. 4 [Page 8 of 15]. That may be, but there is no explanation as to why discovery in state cases, assuming for the sake of argument it is all admissible in seventy different federal cases, would obviate the need for federal pretrial proceedings. The plaintiffs still need to work up their cases and satisfy their burdens of proof. Assuming that the state discovery documents are admissible in

---

[6] Movants caution the Panel that the Holyfield Response, p. 3, miscites the reporter; their objection cites to 363 F. Supp.**2d** 1375 [Doc. 57, Page 7 of 15], rather than 363 F. Supp. **3d** 1375.

3

all federal actions, federal litigation typically entails motions to dismiss, motions for summary judgment, and/or *Daubert* challenges to experts.  No discovery in a state court will obviate the need for dozens of different federal judges to make pretrial rulings. Thus, while state court proceedings are relevant to selecting the site of centralization, and here the existence of a California JCCP counsels the selection of the Northern District of California, state courts cannot fulfil the role of a federal jurist in rendering pretrial decisions. On this point, the Holyfield Opposition cites *In re: Cymbalta (Duloxetine) Prod. Liab. Litig.*, 65 F. Supp. 3d 1393 (J.P.M.L. 2014) (cited at Holyfield Resp., p. 4 [Page 8 of 15]), out of context. That decision did not reference discovery that had taken place in state court. Rather, centralization was denied because discovery was closing in two or three days from the Panel's decision in earlier-filed ***federal*** cases. 65 F. Supp. 3d at 1394 (Panel decision issued on 12/10/2014 and discovery was closing 12/13/2014 or 12/12/2014). The rest of the federal cases subject to the transfer motion were "still in their infancy." *Id*. Here, in contrast, there are no federal cases worked up to the eve of discovery that parties are trying to centralize with nascent actions.

The Holyfield Response also misconstrues this Panel's references to "the mere possibility of future filings." *See* Holyfield Resp., p. 8 [Doc. 57, Page 12 of 15] (quoting *GM Chevrolet Bolt EV Battery*, 2021 WL 1220771 at *2). This Panel did not discount ***filed*** related actions, which the Holyfield Response appears to do. Rather, the Panel decision was discounting apparently unsubstantiated prognostications that at one point in the future, related actions ***would*** be filed.

## III.   The Honorable Edward  Chen, United States District Court Judge, Northern District of California, Is the Most Appropriate Transferee Court and Has the Support of Most Plaintiffs.

The case for centralizing a paraquat MDL in Judge Chen's Court has grown stronger since the initial transfer motion was filed with this Judicial Panel. More cases have been filed in the

Northern District of California (sixteen), and more cases have been transferred into the Honorable Edward M. Chen's Court. *See* Exhibit 1, Related Case Order, Doc. 21, No. 3:21-cv-02083-EMC (N.D. Cal. April 30, 2021) (transfer order). Judge Chen signed the Related Case Order, transferring two cases and recognizing that additional paraquat cases are related to *Rakoczy v. Syngenta Crop Protection, LLC*, No. 21-cv-02083-EMC. *Id.* This enhances the propriety of Judge Chen as the transferee forum.

In addition to the growing number of cases already pending before him, another development, between the initiation of MDL No. 3004 and the time of filing this Reply, further supports the selection of Judge Chen as the steward of this new MDL. Eight responses recognize that the forum for pre-trial coordination would be appropriately located in the Northern District of California, explaining that:

> Transfer of the consolidated litigation to the Northern District of California's San Francisco Division promotes judicial economy. The Northern District of California's San Francisco Division is conveniently located only forty miles from Defendant Chevron U.S.A.'s headquarters in San Ramon, providing easy access to documents and witnesses. . . . Additionally, as there is a consolidated state court action already present in California, sending this litigation to the Northern District of California's San Francisco Division would allow for coordination with the state court litigation as well. . . . Finally, consolidation before Judge Chen would promote judicial economy given he has the oldest case in the Northern District of California and has already started familiarization of himself with this litigation.

Ward Resp. [Doc. 60], p. 2 (citing *In re: Lumber Liquidators Chinese-Manufactured Flooring Products Mktg., Sales Practices & Products Liab. Litig.*, 109 F. Supp. 3d 1382, 1383 (J.P.M.L. 2015); *In re: Air Crash at San Francisco, Cal.*, 987 F. Supp. 2d 1378, 1379 (J.P.M.L. 2013); note omitted).

Plaintiffs do not dispute that the Northern District of California before the Honorable Edward M. Chen ("Judge Chen") would be appropriate. That District, and specifically Judge Chen's qualifications and experiences, are unapparelled in

handling Multi-District Litigation ("MDL") involving complex legal matters. Judge Chen and the Northern District of California meet or exceed the factors of being an appropriate transferee forum.

DiCello Resp. [Doc. 97], p. 4.

**Judge Edward M. Chen is an Highly Qualified Jurist to Manage the Proceedings.** Judge Edward M. Chen has a proven track record of overseeing complex litigations including multi-district litigations. See *In re: Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liab. Litig*., MDL No. 2777; *In re Carrier IQ, Inc. Consumer Privacy Litig*., MDL No. 2330; *In re: Wells Fargo Loan Processor Overtime Pay Litig*., MDL No. 1841; and *In re: Wells Fargo Home Mortgage Overtime Pay Litig*., MDL No. 1770. This Panel recognized Judge Chen as "a jurist well-versed in the nuances of complex and multidistrict litigation who can steer this matter on a prudent course" in the Chrysler-Dodge-Jeep MDL. *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prod. Liab. Litig*., 273 F. Supp. 3d 1377, 1379 (J.P.M.L. 2017). Consistently, in the Carrier IQ litigation, the Panel recognized that in selecting Judge Chen, "we are choosing a jurist experienced in multidistrict litigation." *In re: Carrier IQ, Inc., Consumer Priv. Litig*., 856 F. Supp. 2d 1332, 1333 (J.P.M.L. 2012). Accordingly, Judge Chen is uniquely qualified to manage the complexities associated with this multi-district litigation.

Albanese Resp. [Doc. 11],  p. 5 (emphasis in original).

Plaintiffs agree that these individual actions, and all those involving similar allegations of Parkinson's disease resulting from paraquat use, should be consolidated in the Northern District of California before the Honorable Edward M. Chen ("Judge Chen"). Judge Chen is amply qualified to steer this litigation and he has already successfully overseen numerous Multidistrict Litigations including: *In re: Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liab. Litig*., MDL No. 2777; *In re Carrier IQ, Inc. Consumer Privacy Litig.,* MDL No. 2330; *In re: Wells Fargo Loan Processor Overtime Pay Litig.*, MDL No. 1841; and *In re: Wells Fargo Home Mortgage Overtime Pay Litig*., MDL No. 1770.

Denes Resp. [Doc. 16], p. 2.

[W]e agree that Judge Chen, in the Northern District of California, would admirably handle this MDL.  . . .
[W]e agree that Judge Chen in the Northern District of California would steer any forthcoming paraquat MDL on an efficient and prudent course.

Altman Resp. [Doc. 63], pp. 3, 8 (alternate choice).

> Plaintiff respectfully requests that these actions be consolidated in the Northern District of California before Judge Chen. Judge Chen has managed complex litigation before and is imminently qualified to do so again.

Tippey Resp. [Doc. 78], p. 2 (alternate choice). *See also* Kearns Resp. [Doc. 24], p. 2 (same).

> "[F]or the reasons stated in the Motion to Transfer and especially because of the Chevron Defendants' headquarters in the State of California," the Northern District of California is plaintiff's alternative choice.

Nunnery Resp. [Doc. 56], p. 4.

A total of forty-one cases were filed by plaintiffs' counsel who support centralization in the Northern District of California:

| Firm | # of Cases before JPML |
|---|---:|
| ANDRUS WAGSTAFF, PC | 9 |
| DiCELLO LEVITT GUTZLER LLC | 6 |
| FEARS NACHAWATI, PLLC | 11 |
| THE MILLER FIRM, LLC | 3 |
| TORHOERMAN LAW LLC | 2 |
| WATTS GUERRA LLC | 10 |
| **Grand Total** | **41** |

Thus, a majority of plaintiffs support Judge Chen's Court as the primary or alternative transferee tribunal.

One response helpfully provides a table illustrating that this case belongs in California. Of the States wherein paraquat cases are pending, California has the highest estimated paraquat use, second in the country only to Texas. Altman Resp., p. 3.[7] This provides an additional reason, over

---

[7]  *See also* Wieben, C.M., 2019, Estimated Annual Agricultural Pesticide Use by Major Crop or Crop Group for States of the Conterminous United States, 1992-2017 (ver. 2.0, May 2020): U.S. Geological Survey data release, accessible at https://doi.org/10.5066/P9HHG3CT.

and above those explained in the initial motion, to transfer paraquat litigation to the Northern District of California.

The arguments in opposition to Judge Chen are unavailing. Chevron admits that the Northern District of California is the site of its corporate headquarters.[8] Contrary to a long line of this Panel's decisions,[9] Chevron makes the inaccurate claim that the site of its own corporate headquarters is allegedly "of marginal to no importance." Chevron Resp., p. 12. To the contrary,

---

[8] *See* Chevron Resp. [Doc. 68], p. 11 ("CUSA's headquarters [is] in San Ramon."); https://www.cand.uscourts.gov/about/jurisdiction-map/ (Contra Costa County [which includes San Ramon] is within the Northern District of California).

[9] *See, e.g., In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, No. MDL 2972, __ F. Supp. 3d __, 2020 WL 7382276, at *2 (J.P.M.L. Dec. 15, 2020) (transferring to South Carolina and reasoning that common defendant has its headquarters in South Carolina); *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Practices Litig.*, 412 F. Supp. 3d 1355, 1356 (J.P.M.L. 2019) ("We conclude that the Eastern District of Michigan is an appropriate transferee forum. Ford, the sole defendant in all actions, has its headquarters in this district, and thus relevant documents and witnesses will be located in this district."); *In re CertainTeed Corp. Roofing Shingle Prod. Liab. Litig.*, 474 F. Supp. 2d 1357, 1358 (J.P.M.L. 2007) (appropriate transferee forum is the district encompassing the headquarters of the common defendant); *In re Foundry Resins Antitrust Litig.*, 342 F. Supp. 2d 1346, 1347 (J.P.M.L. 2004) ("On balance, we are persuaded that the Southern District of Ohio is a preferable transferee forum for this litigation. Two defendants maintain headquarters within the district, which implies that relevant documents and witnesses will likely be found there."); *In re Welding Rod Prod. Liab. Litig.*, 269 F. Supp. 2d 1365, 1367 (J.P.M.L. 2003) (observing that corporate headquarters of several defendants are located in transferee district); *In re Elec. Data Sys. Corp. Sec. & 'ERISA' Litig.*, 254 F. Supp. 2d 1375, 1376 (J.P.M.L. 2003) (noting that appropriate transferee forum is district of *inter alia* corporate defendants' headquarters); *In re Commonwealth Oil/Tesoro Petroleum Sec. Litig.*, 458 F. Supp. 225, 230 (J.P.M.L. 1978) (transferring to district of corporate headquarters of two major defendants); *In re Upjohn Co. Antibiotic 'Cleocin' Prod. Liab. Litig.*, 450 F. Supp. 1168, 1170 (J.P.M.L. 1978) (crediting argument that Upjohn's headquarters is in Kalamazoo, Michigan and transferring to Eastern District of Michigan); *In re Falstaff Brewing Corp. Antitrust Litig.*, 434 F. Supp. 1225, 1230 (J.P.M.L. 1977) (transferring cases to the Eastern District of Missouri and reasoning that party's "corporate headquarters were located in St. Louis prior to and during the events from which this litigation arose."); *In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*, 424 F. Supp. 504, 507 (J.P.M.L. 1976) ("The Western District of Washington is clearly the most appropriate transferee forum for this litigation. Since the corporate headquarters and records of all defendants are located in or near that district[.]"); *In re U. S. Fin. Sec. Litig.,* 375 F. Supp. 1403, 1404 (J.P.M.L. 1974) ("The Southern District of California . . . is clearly the most appropriate transferee forum for this litigation. U.S. Financial's corporate headquarters are located in the Southern District of California[.]").

the district of a defendant's headquarters "possesses a clear nexus to the litigation." *In re Charter Commc'ns, Inc., Sec. Litig.*, 254 F. Supp. 2d 1379, 1381 (J.P.M.L. 2003). This and other panel decisions belie Chevron's argument that the site of its own corporate headquarters is allegedly de minimis. *See* note 9 *supra*.

Chevron's attempt to sweep the site of its corporate headquarters under the rug is belied by another important point: the coordinated California state court cases are proceeding in a Judicial Council Coordinated Proceeding in Contra Costa County, which is the County of Chevron's corporate headquarters and is geographically located within the Northern District of California's boundaries.[10] Where a federal district court is also the situs of related state court proceedings, this "carries the added benefit of fostering coordinated discovery between the federal and state proceedings, should such a need arise." *In re Gen. Motors Corp. Sec. & Derivative Litig.*, 429 F. Supp. 2d 1368, 1370 (J.P.M.L. 2006). Indeed, parties arguing for an Illinois district court contend that the geographic correlation of state court cases weighs in favor of selecting the federal District forum. *See e.g.*, Altman Resp., pp. 5-7.

Defendants argue that the plaintiffs in the California cases are not residents of California and presume that none of the plaintiffs' lawyers "reside in California." Chevron Resp., p. 11; *see also* Syngenta Resp., pp. 4-5. These defense arguments are misleading, at best. As Defendants know, Chevron is a citizen of the State of California for purposes of diversity of citizenship; therefore, if the plaintiffs were California citizens, then their cases would not be filed in California

---

[10] *See* Brief in Support of Plaintiff's Mot. for Transfer of Actions to the Northern District of California Pursuant to 28 U.S.C. § 1407, p. 14.

federal court. *See* 28 U.S.C. § 1332(a). Moreover, Chevron completely ignores that five plaintiffs' firms have California offices,[11] and that its own counsel is located in California.[12]

Syngenta complains about the Pacific Time Zone, specifically discussing when courts open in Switzerland (*see* Syngenta Resp., pp. 5-6)—a red herring if ever there was one, and a line of argumentation that Syngenta is unable to legitimize with any citation. Complaints about the Pacific Time Zone ignore the countless MDLs that have been instituted in this Time Zone. Just looking at currently pending MDLs, approximately thirty are in the Pacific Time Zone. *See* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-April-15-2021.pdf.

In sum, the Honorable Edward Chen, Northern District of California, is the best choice for centralization under Section 1407 because paraquat cases are now pending before him, because a total of sixteen cases are pending in the Northern District of California, because one defendant's headquarters is located in the Northern District of California, because consolidated California state court proceedings also raising claims for paraquat-induced Parkinson's disease are pending in the County Court within the Northern District of California's geographic region, because Judge Chen

---

[11] Five plaintiffs' firms have offices in the State of California:

| Firm | # of Cases before JPML | California office locations announced on firm websites. |
|---|---|---|
| FEGAN SCOTT LLC | 1 | https://www.feganscott.com/contact-us/ |
| GUSTAFSON GLUEK PLLC | 16 | https://gustafsongluek.com/contact-us |
| NAPOLI SHKOLNIK, PLLC | 1 | https://www.napolilaw.com/our-locations/california/ |
| WATTS GUERRA LLC | 10 | https://wattsguerra.com/contact/ |
| ZIMMERMAN REED, LLP | 1 | https://www.zimmreed.com/about/contact-us/ |

[12] *Compare* Chevron Resp., 15 (signature page listing address of Steptoe & Johnson LLP as Los Angeles, California (no street address given)).

specifically and the Northern District of California generally have been recognized by this Judicial Panel as able stewards of Multidistrict Litigation, because a major international airport makes this District accessible to parties and witnesses, and because most plaintiffs on the MDL No. 3004 docket are represented by counsel who support Judge Chen, Northern District of California, as the transferee forum.

**IV.     Certain of the Proposed Alternatives Would Not Serve the Interests of Judicial Efficiency or the Convenience of the Parties and Witnesses.**

Nine respondents recognize the Honorable Nancy J. Rosenstengel, United States District Court Judge, Southern District of Illinois, as an appropriate transferee jurist. *See* Burnette Resp. (first choice); Andrus Wagstaff Resp. (alternative choice to Judge Chen); Kearns Resp. (first choice; Judge Chen as alternative); Barber Resp. (only choice); Holyfield Resp. (second choice; transfers opposed); Ward Resp. (alternative choice to Judge Chen); Altman Resp. (first choice; Judge Chen as alternative); Korein Tillery Resp. (only choice); Tippey Resp. (only choice). Judge Rosenstengel is an imminently qualified jurist in a central location that will serve the convenience of the parties and witnesses. If this Panel does not transfer the paraquat litigation to Judge Chen, Northern District of California, then the undersigned joins the consensus of nine other respondents in recommending Judge Rosenstengel.

Other suggested forums for this litigation would not promote the convenience of the parties and witnesses or serve the interests of judicial efficiency animating 28 U.S.C. § 1407, as explained below.

**A. The District of Minnesota Would Not Serve the Convenience of Parties and Witnesses Nor Promote the Just and Efficient Conduct of Such Actions.**

One responding plaintiffs' brief argues that the nationwide body of paraquat litigation should be transferred to the District of Minnesota, and the Defendants cite this District as an

11

alternative choice. *See* Gustafson Resp.; Chevron Resp.; Syngenta Resp. These arguments are unavailing to two primary reasons: 1) the arguments regarding Minnesota's alleged connection to paraquat litigation are unsupported and unsupportable; 2) Minnesota is an inconvenient, Northern location wherein travel is not infrequently rendered impossible.

The Gustafson firm misplaces heavy reliance on inaccurate descriptions of Minnesota's relationship to paraquat litigation. The key purported reasons for transferring cases, which span the country from California to West Virginia, to the District of Minnesota are that, allegedly, the majority of plaintiffs are "likely" to be located in "the Midwest,"  that Minnesota allegedly is "in the middle of the region where Paraquat is most widely applied to crops," and that "the majority of Paraquat is applied" in the "Midwest." Gustafson Resp., [Doc. 62] pp. 1, 3, 4. No citation is provided for these contentions. They are not true.

1.       *Most plaintiffs are not "likely" to be living in the vicinity of Minnesota.* Gustafson's Respondent brief provides no citation supporting its claim as to where the plaintiffs are likely to live. This is a glaring omission considering that the two states identified as sites of paraquat litigation--California and Illinois—do not even border Minnesota. The Altman plaintiffs have provided a table of the top fifteen States of Paraquat Usage in the United States. Altman Resp., p. 3. Not only is Minnesota nowhere on this list, but the first three States—Texas, California, and North Carolina--are not even in the "Midwest."

Comparing data for paraquat use reveals that if the Panel accepts the premise of Gustafson's argument, i.e. that the situs of the most paraquat application strongly impacts the transferee site, then Minnesota must be resoundingly rejected in favor of California.  According to United States Geological Survey data, California and Minnesota may be compared as follows:

| Paraquat Usage (in kg.) \| 2013-17 | | |
|---|---|---|
| Rank | State | High Estimate (in kg.) |
| 2 | California | 2,338,286 |
| 21 | Minnesota | 523,717 |

*See* Wieben, C.M., 2019, Estimated Annual Agricultural Pesticide Use by Major Crop or Crop Group for States of the Conterminous United States, 1992-2017 (ver. 2.0, May 2020): U.S. Geological Survey data release, available at https://doi.org/10.5066/P9HHG3CT.[13]

2.    *Minnesota is not in the middle of paraquat litigation.* The only plaintiffs' brief that wants this MDL in Minnesota substantially relies on the argument that Minnesota is "in the middle." Altman Resp., pp. 3-4 (arguing that his purported fact "weighs substantially in favor of" Minnesota). Minnesota borders Canada—it is not in the "middle" of any region in the United States.

3.    *Stripping away unsupported and insupportable arguments, there is no reason why Minnesota is convenient.* Other than plaintiffs in a minority of the filed cases and ipse dixit proclamations as to where future plaintiffs will "likely" be from, there is no identification of witnesses or evidence in the State of Minnesota.[14]

4.    *Minnesota is decidedly inconvenient for this litigation.* Minnesota is a far Northern state that is inconvenient for parties and witnesses. If an MDL is located there, then interruptions

---

[13]  High Estimate (in kg) = sum of all crop groups for each year. Croup Groups provided by Data Source: Corn; Soybeans; Wheat; Cotton; Vegetables and fruit; Rice; Orchards & grapes; Alfalfa; Pasture and hay; and Other Crops.

[14] Syngenta states that one of its companies is there but does not claim that this is a reason why a Minnesota forum would be convenient for parties or witnesses.

in travel in the winter months will in all likelihood prohibit access to the courthouse.[15] Moreover, there is a disconnect between the Gustafson firm's convenience argument and its transfer request. The District is allegedly convenient because Minneapolis has an international airport. Gustafson Resp., p. 5. However, these plaintiffs are not necessarily asking for a Minneapolis courthouse, because according to them the cases are "assigned to a number of different judges." *Id.*  In addition to Minneapolis, there are federal courthouses in St. Paul, Duluth, and Fergus Falls. https://www.mnd.uscourts.gov/.

### B.  The Northern District of California Has a Closer Nexis with Paraquat Litigation than the Eastern District of Missouri.

Judge Ross is an excellent, well-qualified jurist, and the Eastern District of Missouri does not suffer from the geographic and logistical inconveniences of Minnesota and other proposed forums.  Nonetheless, this forum does not have any particular connection to either defendant, nor is it associated with a state coordinated proceeding, such as the California JCCP.  The primary reason for advancing this forum is because Judge Ross presides over the first-filed case by seven months and that Judge Ross has issued a memorandum opinion on preemption.[16]  While the undersigned recognize this opinion as scholarly, we note that Judge Ross's one Memorandum and

---

[15] *See, e.g.,* <u>Roads Are Closed To Keep You Safe. Why Does MnDOT Close Roads During a Winter Storm?</u> http://www.dot.state.mn.us/workzone/closures.htm (""When extreme snowfall and loss of visibility make driving dangerous, we may need to close roads for the safety of both motorists and snowplow operators."); Exhibit 2, James Walsh, <u>Christmas Blizzard Pummels Minnesota, Closing Roads, Stranding Drivers,</u> Star Tribune (Dec. 24, 2020); Exhibit 3, Janet Moore and Tim Harlow, <u>Snowstorm Hits Minnesota, Setting Up Holiday Travel Mess,</u> Star Tribune (Nov. 27, 2019); Exhibit 4, Paul Walsh, <u>Heavy Snowfall Pushes Twin Cities to February Record, With More in Forecast,</u> Star Tribune (Feb. 21, 2019).

[16] While defendants name Judge Limbaugh, they can articulate no real reason for transferring the case to him, and instead point to his qualifications as an MDL Judge. There are no cases assigned to Judge Limbaugh at all, much less is he the jurist assigned to a first-filed case or the author of any rulings in paraquat litigation. There is no justification for transferring seventy paraquat cases to a Court that does not have any.

Order in the one *Holyfield* case was issued after the motion requesting transfer and centralization was filed with this tribunal. Put another way, the case before Judge Ross is not so far advanced that it presents a significant contrast with the other originally scheduled and related actions.

This Court's authorities recognizing the preference for more advanced litigation are based on longer time periods than seven months, and more advancement than one order in a single case. *Compare In re: Park W. Galleries, Inc., Mktg. & Sales Practices Litig*., 645 F. Supp. 2d 1358, 1360 (J.P.M.L. 2009) (cited at Chevron Resp., pp, 4-5) (*Blackman* action was "measurably more advanced" than Michigan action), *with Blackman v. Park W. Galleries, Inc.*, No. C08-1310RSL, 2009 WL 1174639, at *3, *4 n.5 (W.D. Wash. Apr. 29, 2009) (Michigan action was not filed until a Section 1404 transfer motion was already pending in *Blackman;* the *Blackman* decision references several arguments already put before that Court: venue, a forum selection clause, severance). *See also In re Int'l House of Pancakes Franchise Litig*., 331 F. Supp. 556, 557, 558 (J.P.M.L. 1971) ("The primary reason for selecting the Western District of Missouri is the fact that the Missouri cases are in a significantly more advanced stage than are those in any other district."; court explained that discovery taken in Missouri would be available to plaintiffs and admittedly "fulfills a large part of their requirements") (case cited at Chevron Resp., p. 5); *In re: Glaceau VitaminWater Mktg. & Sales Practices Litig*., 764 F. Supp. 2d 1349, 1351 (J.P.M.L. 2011) ("The action in that district has been pending **for two years**, and is far more advanced than any other action in this litigation.") (emphasis supplied) (case cited at Chevron Resp., p. 5); *In re: Roundup Prod. Liab. Litig*., 214 F. Supp. 3d 1346, 1348 (J.P.M.L. 2016) ("We select the Northern District of California as the appropriate transferee district for this litigation. **Two** of the earliest-filed and most procedurally advanced actions are pending in this district. The Northern District of California

is both convenient and easily accessible for all parties[.]") (emphasis added) (case cited at Chevron Resp., p. 5).

Other cases cited by defendants on the issue of first-filed cases are distinguishable for other reasons. *See In re Dicamba Herbicides Litig.*, 289 F. Supp. 3d 1345, 1347 (J.P.M.L. 2018) (forum was the district of "the **two** earliest-filed actions," as well as the site of defendant's corporate headquarters and the location of various relevant activities) (emphasis added) (case cited at Chevron Resp., p. 5); *In re Hyundai & Kia Fuel Econ. Litig.*, 923 F. Supp. 2d 1364, 1366 (J.P.M.L. 2013) ("**all** responding parties support centralization in this district, where defendants are based and the majority of the actions have been filed") (emphasis added) (case cited at Chevron Resp., p. 5); *In re Standard Auto. Corp. Retiree Benefits "ERISA" Litig.*, 431 F. Supp. 2d 1357, 1358 (J.P.M.L. 2006) (only two districts at issue and moving defendants sought centralization in either one; court said either would be appropriate and selected first-filed) (case cited at Chevron Resp., p. 5).[17]

### C. The Northern District of Alabama Would Not Serve the Convenience of Parties and Witnesses Nor Promote the Just and Efficient Conduct of Such Actions.

Only a single movant believes that the entirety of the federal paraquat cases nationwide should be transferred to the Honorable Corey L. Maze in the Northern District of Alabama. Rutherford Resp. [Doc. 75]. This one plaintiff argues that "Judge Maze is well rounded and distinguished in all aspects of lawyering," and recites his experience, acting as a lawyer in the Alabama Attorney General's office, working on relatively recent litigation (i.e., the opioid crisis

---

[17] There is a case where this Panel accorded "some weight" to a prior filing of over six months earlier, but that decision is otherwise distinguishable. *In re Prudential Ins. Co. of Am. SGLI/VGLI Cont. Litig.*, 763 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011) (citation omitted) (case cited at Chevron Resp., p. 6; Syngenta Resp., p. 7). There, only two different Districts were at issue, and plaintiffs resided in the district of the first-filed action.

and the *BP* case).  *Id*. at p. 3. Undersigned need not dispute Judge Maze's well rounded experience as a lawyer or his qualifications as a jurist, because relevant factors overwhelm these points and militate against the transfer of what Rutherford predicts as "thousands of cases"[18] to Alabama.

The Rutherford plaintiff disagrees with the United States District Clerk's Office regarding the location of Judge Maze's Court. Rutherford argues that Judge Maze's Court is convenient solely based on the claim that Judge Maze's court is located in Birmingham, Alabama. Rutherford Resp., p. 3. However, according to the United States District Court's website, Judge Corey L. Maze's Court is located in Anniston, Alabama. Specifically, the United States District Court, Northern District of Alabama, states the following on its Judge's information page:

**Chambers Location:**
United States District Court
1129 Noble Street
Anniston, AL 36201

https://www.alnd.uscourts.gov/content/judge-corey-l-maze. Moreover, the phone numbers for Judge Maze's Chambers and the Courtroom Deputy and Docketing clerk have the 256 Area Code, which is not a Birmingham code.[19]

Anniston, Alabama is not a convenient location for paraquat cases filed in federal District Courts from coast to coast. Anniston has a population of approximately 22,000, and is not conveniently located or easily accessible to parties and counsel. Indeed, Rutherford cannot and does not contend that Anniston is easily accessible or convenient. Nor does Rutherford contend that Judge Maze's Court, or the Northern District of Alabama, has any connection to Paraquat

---

[18] Rutherford Resp., p. 2. Rutherford makes this prediction to the Panel based on his counsel's claim that he talked to other law firms. *Id*. None of these law firms are identified. No declaration is filed in support of this claimed fact.
[19]

*Compare         id.         with         https://www.allareacodes.com/256         or https://www.areacodehelp.com/where/area_code_256.shtml.*

litigation other than the fact that one plaintiff—Jonathan Rutherford—filed his case in Alabama. On the record before this Panel, no parties or witnesses—save one—has any connection to this forum or finds it convenient.

### D. The Northern District of Mississippi Would Not Serve the Convenience of Parties and Witnesses Nor Promote the Just and Efficient Conduct of Such Actions.

The Nunnery response recognizes the Northern District of California as an appropriate forum for an *In re Paraquat Products Liab. Litig.* MDL, but cites the Northern District of Mississippi, the Honorable Debra Brown, as their first choice. [Doc. 56]. Of course Judge Brown is an excellent jurist capable of shepherding a Multidistrict Litigation. Nonetheless, locating this MDL in Greenville, Mississippi, would be markedly inconvenient to the parties and witnesses. This city is hours away from any international airport and is only convenient to its 30,588 residents, none of whom are parties or witnesses.[20] Only one lone plaintiff finds this forum to be convenient, but conspicuous by omission is identification of a single party, witness, or exhibit in Paraquat litigation that is located in Greenville, Mississippi.

### E. The Northern District of Texas Has No Connection to Any Party, and No Case Is Filed There; this District Would Not Serve the Convenience of Parties and Witnesses Nor Promote the Just and Efficient Conduct of Such Actions.

None of the cases in the original schedule of actions, or in the related actions, are pending in the Northern District of Texas. No parties are located there either. Chevron argues, without citation to any case law, that the Northern District of Texas is appropriate for centralization of the

---

[20] Nunnery states that, "Judge Brown's courthouse in Greenville is only a short drive from Greenville Mid-Delta Airport . . . ." Doc. 56, Page 4 of 5. Nunnery omits that this airport is a former military base now owned by the City, and it has no commercial airlines flying in and out of it, with the exception of "Boutique Air." *See* https://www.greenvillems.org/airport. Nor is Greenville in convenient proximity, or indeed any proximity, to an international airport. The closest one appears to be in Jackson, Mississippi, which is an approximate two and a half hour drive.

paraquat MDL because of the location of two plaintiffs' firms. Chevron Resp., p. 9 & n.6. This argument is quite curious given that neither of these firms wants this litigation to proceed in the Northern District of Texas. *See* Motion to Transfer and Brief in Support [Docs. 1, 2]; Altman Resp. [Doc. 63]. Moreover, Chevron's argument as to Watts Guerra is particularly disingenuous as that firm is not even based in the Northern District of Texas. *See* Altman Resp., p. 9 (signature page with San Antonio address).

### F. The Eastern District of Pennsylvania Would Not Serve the Convenience of Parties and Witnesses Nor Promote the Just and Efficient Conduct of Such Actions.

Finally, the DiCello Response agrees that the Honorable Edward M. Chen, Northern District of California, is the appropriate transferee court, and suggests the Eastern District of Pennsylvania as an alternate. DiCello Resp. (Doc. 97), p. 4. Only three cases have been recently filed in Pennsylvania, and no argument is made to the effect that witnesses, documents, or any significant number of parties are located in Philadelphia.  The Response argues that Chevron was incorporated in Pennsylvania and states that the Time Zone is more convenient to Switzerland. DiCello Resp., p. 5. While the state of incorporation certainly could be significant in some cases, Chevron neither requests a Pennsylvania forum nor argues that this forum is connected with paraquat litigation, and the DiCello Response does not state that the state of incorporation will lead to discovery in Pennsylvania. Again, the country of Switzerland is a red herring in the context of the issues before this Judicial Panel. The Atlantic Ocean prohibits anyplace in the United States from being an actual convenience to Switzerland, and no one is proposing a United States District Court in the northeast in any event.

## V.   CONCLUSION

Only one of seventeen respondents denies that paraquat litigation is appropriate for centralization pursuant to 28 U.S.C. § 1407, and that response relies on Panel decisions addressing

far fewer cases than seventy in fifteen different United States District Courts (and counting). Plaintiffs in most federal cases now on file recognize that the Honorable Edward M. Chen's Court, in the Northern District of California, is an appropriate transferee forum. Undersigned respectfully requests that the Panel transfer the actions on the original Schedule and the related actions docketed, for pretrial proceedings before the Northern District of California, and assign the multidistrict litigation to the Honorable Edward M. Chen. In the alternative, Movant requests assignment to the Honorable Nancy J. Rosenstengel, in the Southern District of Illinois.

Respectfully Submitted,

*/s/ S. Ann Saucer*
S. ANN SAUCER (LA SBN: 21368; TX SBN: 00797885)
asaucer@fnlawfirm.com
N. MAJED NACHAWATI (TX SBN: 24038319)
mn@fnlawfirm.com
PATRICK A. LUFF (TX SBN: 24092728)
pluff@fnlawfirm.com
**FEARS NACHAWATI, PLLC**
5473 Blair Road
Dallas, Texas 75231
Telephone: (214) 890-0711

*Fears Nachawati, PLLC is counsel of record for Movant Paul Rakoczy and Plaintiffs Michael and Jean Kearns, Todd Tenneson, Kenneth Turner, Donald Ayres, Gary Dietrich, Layne Larsen, Michael Glassburn, Dale Smith, Charles Adams, Jodie Moen, and Ricardo Spriggs*